# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanisha Nesmith, : 
 : 
     Petitioner : 
 : 
   v. : No. 532 C.D. 2015
 : 
Workers' Compensation Appeal : Submitted: September 4, 2015
Board (Southeastern Pennsylvania : 
Transportation Authority), : 
 : 
     Respondent : 


BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE P. KEVIN BROBSON, Judge
     HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**    **FILED: January 8, 2016**


   Tanisha Nesmith (Claimant), pro se,[1] petitions for review of an Order of the Workers' Compensation Appeal Board (Board) affirming a Workers' Compensation Judge's (WCJ) Decision denying Claimant's Petition to Reinstate Compensation Benefits (Reinstatement Petition) and Petition to Review Compensation Benefits (Review Petition), and granting the Southeastern

---

[1] Claimant was represented by counsel during the proceedings before the WCJ and the Board.

Pennsylvania Transportation Authority's (Employer) Petition to Terminate Benefits (Termination Petition). On appeal, Claimant argues that: (1) the WCJ's finding that she has recovered from her work-related injuries is not supported by substantial evidence; (2) the medical testimony relied upon by the WCJ in making the factual findings was equivocal; (3) the WCJ did not issue a reasoned Decision; and (4) the WCJ erred in denying her Reinstatement Petition because the WCJ required Claimant to prove the causal connection between her current condition and the original work-related injury. Because we conclude that the WCJ issued a reasoned Decision supported by substantial evidence and discern no error of law, we affirm.

## I. BACKGROUND

Claimant was injured in the course and scope of her employment as a bus driver for Employer on August 14, 2011. (WCJ Decision, Findings of Fact (FOF) ¶¶ 1-2.) Employer issued a Notice of Temporary Compensation Payable (NTCP) on August 29, 2011 accepting a "[s]prain/strain of mid to low back. Muscle Pain [p]ost M[otor] V[ehicle] A[ccident]" and granting compensation based on an average weekly wage of $686.73. (NTCP, C.R. at Item B-1.) The NTCP states that the injury was the result of a vehicle running a red light and making contact with the bus Claimant was driving. Employer filed a Notice of Compensation Payable (NCP) on September 20, 2011 accepting the same injuries. (FOF ¶ 1.) Claimant received workers' compensation benefits for her injuries from August 14, 2011 until Employer suspended Claimant's benefits on September 20, 2011 on the basis that Claimant had returned to work at her pre-injury salary level. (Notice of Suspension or Modification, C.R. at Item B-1; FOF ¶ 1.) Claimant's workers'

compensation benefits were reinstated on a partial basis effective September 28, 2011 because Claimant was placed on light duty by a second opinion doctor, resulting in a loss of earnings. (FOF ¶ 1.) Claimant returned to work with no loss of earnings on October 29, 2011, leading Employer to suspend Claimant's workers' compensation benefits effective October 29, 2011. (FOF ¶ 1.) Claimant and Employer entered into a Supplemental Agreement for Compensation for Disability or Permanent Injury (Supplemental Agreement) on October 29, 2011 stating:

> Employee's recurrence of total disability ended [October 2, 2011] and partial total disability ended as of [October 28, 2011]. Employee reported to work as of [October 29, 2011] at wages equal or greater to the [average weekly wage] of $686.73. No further medical treatment required. Therefore, benefits terminated as of October 29, 2011.

(Supplemental Agreement, C.R. at Item B-1.)

Claimant filed a Reinstatement Petition on June 8, 2012, seeking to reinstate benefits as of May 30, 2012. Claimant alleges in her Reinstatement Petition that her condition has worsened and that her injury is causing a decrease in earning power. Claimant then filed a Review Petition on August 30, 2012, alleging that the NCP "is materially incorrect as it does not recognize work[-]related [injuries to her] neck, left knee, persistent distal patellar tendinitis as well as tibial tubercle pain." (Review Petition at 2, C.R. at Item 6.) Employer filed the instant Termination Petition on November 2, 2012, alleging that Claimant has fully recovered from her work-related injuries and was able to return to unrestricted work as of August 29, 2012. Answers were filed to the three Petitions, the

3

Petitions were consolidated, and assigned to the same WCJ for hearings and disposition.

## II. PROCEEDINGS BEFORE THE WCJ

In support of her Reinstatement and Review Petitions, Claimant testified on her own behalf at a July 24, 2012 hearing before the WCJ and submitted the deposition testimony of medical experts Seth David Krum, D.O., and Maxwell Stepanuk, Jr., D.O. In support of its Termination Petition, Employer presented the deposition testimony of its medical expert, Christian Fras, M.D.

Claimant testified as follows. Claimant worked as a bus driver for Employer since 2009. On August 14, 2011, Claimant was driving an empty bus for Employer when another vehicle struck the front right side of the bus. Claimant was wearing a seatbelt at the time, but the bus was only equipped with a lap belt and the impact of the collision caused Claimant to hit her head. Claimant attempted to leave the bus to assess the damage. While exiting the bus Claimant hit her knee on the steering wheel of the bus.

Claimant was treated for neck and back injuries at Jeanes Hospital and Temple University Hospital until she went back to full duty on October 29, 2011. Claimant told her doctor at Jeanes Hospital that she injured her knee, but the doctor there would not acknowledge the injury. Claimant could not remember if she told the doctor at Temple University Hospital that she injured her knee in addition to her neck and back.

Claimant acknowledged signing the Supplemental Agreement terminating benefits on October 29, 2011, but testified that she was still having symptoms in her knee, neck, and back at that time and told her doctors and Employer such. Employer and the doctor at Temple University Hospital told Claimant to "see what [she] [could] do." (Hr'g Tr. at 14, July 24, 2012.) Upon return to full duty, Claimant experienced pain in her lower back, neck, and down her left arm and went to see her family doctor. Claimant's knee also started to bother her more. Claimant's family doctor referred her to pain management and physical therapy, though she never actually received pain management treatment. Claimant continues to receive physical therapy on her back about three times per week. Claimant also received therapy on her neck, but the treatments were ceased because they caused Claimant pain. Claimant's injuries resulted in her occasionally missing work, leaving work early, and ultimately caused her to stop working entirely on May 30, 2012.

Dr. Krum, a board certified orthopedist, testified as follows. He first saw Claimant on July 26, 2012 to evaluate her left knee. Dr. Krum took Claimant's history and learned about the bus accident. Claimant told Dr. Krum that she originally did not think much about her knee discomfort and that the pain worsened over time. Dr. Krum performed an examination on Claimant, which revealed that

> [Claimant] had full left knee range of motion. She had some hypertrophy or swelling to the tibial tubercle, and she was markedly tender at the tibial tubercle and over the inferior patellar tendon. There was not any appreciating interarticular-type pathology on my clinical exam. There's no effusion.

5

(Krum's Dep. at 9.) Dr. Krum diagnosed Claimant with a contusion to the left lower patellar tendon and the tibial tubercle site, and patellar tendonitis due to Claimant striking her knee at the time of the accident.

Dr. Krum saw Claimant for a follow-up appointment on September 13, 2012 where he observed that Claimant was improving. Dr. Krum also examined an MRI taken of Claimant's left knee on August 24, 2012, which Dr. Krum described as normal. Based on his examination, Dr. Krum did not restrict Claimant from working her full-duty position and opined that her prognosis is good.

Dr. Stepanuk, a board certified orthopedic surgeon and one of Claimant's treating physicians, testified in support of Claimant's Petitions as follows. Dr. Stepanuk's initial evaluation of Claimant occurred on March 29, 2012, where he took Claimant's medical history and conducted a physical exam. Claimant was working her regular job at the time she first saw Dr. Stepanuk. Dr. Stepanuk's physical examination of Claimant's neck, back, and legs revealed:

> [Claimant] had pain upon palpating the cervical muscles. She had a decrease in cervical motion. She had no pain to either upper extremity, the reflexes were equal. She had normal sensation. She also had pain in the right dorsal region. She had pain in the lumbar region upon palpation. She could forward bend to two feet to the floor; back and side bending was 30 degrees, which is a restriction. . . . [Claimant] has pain in the anterior aspect of the left knee with pain about the tibial tubercle. There was a negative Apley's and McMurray's sign. She had some pain in the right buttock. There was no evidence of instability or atrophy and no weakness was present. The reflexes were equal and straight leg raising was negative.

6

(Stepanuk's Dep. at 9-10.)  Dr. Stepanuk's initial diagnosis was "cervical, dorsal lumbar sprain and strain, a possible right lower extremity radiculopathy, and ruled out internal derangement of the left knee."  (Stepanuk's Dep. at 10.)

Claimant returned to see Dr. Stepanuk on May 17, 2012.  Dr. Stepanuk reviewed MRIs taken on April 24, 2012 of Claimant's cervical and lumbar spine. Dr. Stepanuk opined that his physical examination and review of the MRIs revealed that Claimant had a "cervical strain and sprain, cervical pain secondary to a disc bulge at C4-5 with the herniation at C3."  (Stepanuk's Dep. at 13.)  He also opined that Claimant had dorsal pain, a lumbar strain and sprain, lumbar pain secondary to a disc bulge at L4-5, right lower extremity radiculopathy, and a sprain of the right anterior cruciate ligament (ACL).  Dr. Stepanuk opined that Claimant's disc bulge at C5 was aggravated by the work accident and that the herniation at C3, the bulge at C4, the bulge at L4, and Claimant's cervical, dorsal, lumbar, and right knee pain are a direct result of the August 14, 2011 work incident.  On cross examination, Dr. Stepanuk testified that his diagnosis of radiculopathy relied on the findings of the April 24, 2012 MRI, Claimant's statements during his examination, and that there were no objective findings in his physical examination that would support a diagnosis of radiculopathy.  In Dr. Stepanuk's opinion, Claimant has not recovered from her injuries.  Dr. Stepanuk acknowledged that Claimant was working through pain at the time of both of his examinations of Claimant, but opined that Claimant is not capable of returning to work driving a bus and should refrain from repetitively twisting, bending, or stooping, and should not lift more than fifteen pounds.

Dr. Fras testified on behalf of Employer's Termination Petition as follows. He is a board certified surgeon who specializes in surgical treatment of spinal disorders. Dr. Fras conducted an independent medical examination of Claimant on August 29, 2012. He took a history and reviewed records from the emergency room, Jeanes Hospital, and Temple University Hospital, as well as reports and records from Dr. Stepanuk and Claimant's chiropractor. Dr. Fras' physical examination did not reveal any objective factor that supported Claimant's complaints of pain. Dr. Fras reviewed the April 24, 2012 MRI of Claimant's cervical spine and opined that

> there was no evidence of any kind of disc herniation or trivial disc bulges. These bulges exerted no compression on the neural elements and no mass effect on any of the neural elements, be it the spinal cord or the exiting nerve roots, and are consistent with physiological disc bulges that we all experience. They are inconsistent with any kind of disc herniation.

(Fras' Dep. at 20-21.) Dr. Fras also reviewed a report of a MRI taken on Claimant's cervical spine in March of 2009 and compared the findings to his reading of the April 24, 2012 MRI of Claimant's cervical spine. Dr. Fras opined that the April 24, 2012 MRI shows "the expected natural progression of the modest degenerative findings that present[ed] in 2009 and continue[d] to progress as would be expected to the findings of 2012, which remain quite modest." (Fras' Dep. at 21.) With regard to Claimant's knee, Dr. Fras stated that there was no pathology identifiable at the time of his evaluation. Dr. Fras opined that a direct blow to the knee, such as the one Claimant allegedly suffered from when exiting the bus, is not consistent with an injury to the ACL or a knee effusion. Further, a knee effusion or sprained ACL would have resolved in the eight months between the date of Claimant's injury and the date of Dr. Fras' evaluation.

8

Dr. Fras opined that Claimant sustained work-related injuries, including a sprain and strain of the mid to low back, and that Claimant *may have* suffered a sprain of the neck. Dr. Fras opined that Claimant had recovered from all her work-related injuries and that his examination revealed no other injuries that would cause Claimant to stop working in May of 2012.

Upon review of the evidence presented, the WCJ found the testimony of Dr. Fras to be more credible than the testimonies of Dr. Krum and Dr. Stepanuk and rejected Dr. Krum's and Dr. Stepanuk's testimonies insofar as they differ from Dr. Fras' testimony. (FOF ¶ 8.) The WCJ cited the following factors used in making this determination:

> a. Dr. Fras is the only testifying medical witness who reviewed a comprehensive compilation of medical records including the emergency room records from the date of the injury and Claimant's initial treatment records at [Jeanes Hospital] and Temple University Hospital.
>
> b. The explanation provided by Dr. Fras regarding the findings on the left knee MRI study as being acute findings is more persuasive than the testimony of Dr. Krum. While Dr. Krum did not relate any of the findings on the April 24, 2012 MRI study to the work injury, he did testify Claimant had a left knee injury as a result of striking her knee on the steering wheel as she was exiting the bus. This Judge does not find this testimony credible in light of the fact that Dr. Krum did not review the medical records of Claimant's initial treatment. Furthermore, Claimant did not have any treatment for her knee prior to seeing Dr. Krum.
>
> c. Dr. Stepanuk advised Claimant was unable to perform the duties associated with her pre-injury position when in fact she was working full duty during both times Dr. Stepanuk examined her prior to his testimony.

9

d. Dr. Stepanuk diagnosed Claimant with lumbar radiculopathy despite acknowledging there was no objective finding or examination finding to support such a diagnosis.

e. The explanation provided by Dr. Fras with respect to the progression of the mild disc bulges revealed by the cervical MRI studies is more credible and persuasive than Dr. Stepanuk's contrary analysis. Claimant's initial treatment records revealed Claimant continued to improve following her work injury and she had returned to full duty following her injury approximately two and a half months after her work injury.

(FOF ¶ 8(a)-(e).) The WCJ also rejected Claimant's testimony to the extent that she asserts she sustained a left knee injury on August 14, 2011 as a result of striking her knee on the steering wheel of the bus. (FOF ¶ 9.)

The WCJ made the following findings of fact.

8. . . .The testimony of Dr. Fras is accepted as fact. . . .

9. . . . Claimant fully recovered from her work injury as of August 29, 2012. Therefore, while Claimant may have the neck and back complaints she asserts, this Judge finds they are unrelated to the August 14, 2011 work injury, after which she returned to full duty for approximately five months prior to again leaving work.

10. Claimant's disability related to her August 14, 2011 work injury did not recur effective May 30, 2012.

11. Claimant did not sustain any injuries additional to those accepted and possibly a neck strain as a result of her work injury. Claimant fully recovered from her work injury effective August 29, 2012.

(FOF ¶¶ 8-11.)

10

Accordingly, the WCJ concluded that Claimant did not meet her burden of proof to sustain her Reinstatement Petition or Review Petition and denied both Petitions. (WCJ Decision, Conclusions of Law (COL) ¶¶ 2-3.) The WCJ also concluded that Employer established that Claimant fully recovered from her August 14, 2011 work injury as of August 29, 2012, and granted Employer's Termination Petition. (COL ¶ 4.)

Claimant appealed the WCJ's Decision to the Board. Upon review, the Board "determined that the WCJ wrote a reasoned Decision supported by substantial evidence, and [that the WCJ] committed no error of law." (Board Decision at 11.) Claimant subsequently filed the instant Petition for Review with this Court.[2]

### III. CLAIMANT'S APPEAL

On appeal to this Court, Claimant first contends that the WCJ's findings supporting her Decision are not supported by substantial evidence. Claimant specifically contends that the WCJ's finding that she had recovered from her work injuries as of August 29, 2012 and that her current ailments are not work related are unsupported by the evidence.

---

[2] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.), 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

11

In her Review Petition, Claimant alleges that the NCP is materially incorrect and seeks to add injuries to her neck and left knee to the description of her work-related injuries. "An NCP is materially incorrect if the accepted injury fails to include all of the injuries that the claimant suffered in the work incident, including injuries that cause an increase in the claimant's disability." Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill), 932 A.2d 346, 349 (Pa. Cmwlth. 2007). The party seeking to amend the NCP bears the burden of proving that it is incorrect. Harrison v. Workers' Compensation Appeal Board (Auto Truck Transportation Corporation), 78 A.3d 699, 703 (Pa. Cmwlth. 2013).

Employer's Termination Petition alleges that Claimant has fully recovered from her work-related injuries and was able to return to work as of August 29, 2012. In proceedings related to a termination petition, the employer bears the burden of proving that a claimant's work injury has ceased. Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.), 705 A.2d 1290, 1293 (Pa. 1997). According to our Supreme Court,

> [i]n a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

Id.

It is well settled that in workers' compensation cases, "[t]he WCJ is the ultimate finder of fact, and the exclusive arbiter of credibility and evidentiary weight." LTV Steel Company, Inc. v. Workers' Compensation Appeal Board (Mozena), 754 A.2d 666, 676 (Pa. 2000). In executing its fact finding role, "the WCJ is free to accept or reject, in whole or in part, the testimony of any witness." Id. The WCJ's evidentiary findings are not, however, immune from review. "The WCJ must base its decision on substantial evidence." [3] Id.

The WCJ here found Dr. Fras' testimony credible and accepted his testimony, including his view that Claimant had recovered from her work-related injury as of August 29, 2012, as fact. Dr. Fras opined that Claimant had no injuries other than those from which she had already recovered and that Claimant is free to return to work without restriction. (Fras' Dep. at 23-24.) The fact that "the record contains evidence to support findings other than those by the WCJ" is of no moment when conducting a substantial evidence review. Pocono Mountain School District v. Workers' Compensation Appeal Board (Easterling), 113 A.3d 909, 918

---

[3] Substantial evidence is

> relevant evidence that a 'reasonable person might accept as adequate to support a conclusion.' In reviewing a decision for substantial evidence, the court must view the evidence in the light most favorable to the party who prevailed before the WCJ and draw all reasonable inferences from the evidence in favor of the prevailing party. . . . [I]t is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made.

Pocono Mountain School District v. Workers' Compensation Appeals Board (Easterling), 113 A.3d 909, 918 (Pa. Cmwlth. 2015) (citations omitted).

13

(Pa. Cmwlth. 2015). Thus, we conclude that the WCJ's finding that Claimant had fully recovered from her work-related injuries as of August 29, 2012, and that any physical ailments Claimant now suffers from are unrelated to her August 14, 2011 injury, is supported by substantial evidence.

Claimant argues that the WCJ erred by finding Dr. Fras' testimony as fact because the testimony was equivocal. Claimant contends that because the Board acknowledged that Dr. Fras' testimony was equivocal with regard to her alleged neck injury and Dr. Fras' testimony on her back was contradictory, his testimony that she was fully recovered from her work-related injuries is also equivocal. Unlike questions of evidentiary weight and witness credibility, whether an expert's testimony is equivocal is a question of law subject to this Court's plenary review. Potere v. Workers' Compensation Appeal Board (Kemcorp), 21 A.3d 684, 690 (Pa. Cmwlth. 2011). "Medical testimony is equivocal if it is less than positive or merely based upon possibilities." Id. We review medical testimony as a whole to determine whether it is equivocal. Id.

The Board concluded that Dr. Fras' testimony with regard to whether Claimant sustained a neck injury was equivocal, but did not find Dr. Fras equivocal with regard to his opinion that Claimant had recovered from her work-related injuries. Upon review, we agree with the Board. Dr. Fras' opinion regarding Claimant's neck injury was equivocal. When asked for his opinion as to Claimant's condition as a result of the work injury, Dr. Fras stated:

> My opinion is that [Claimant] sustained injuries including sprain and
> strain of the mid to low back. I was of the opinion and remain of the

14

opinion that she may have also sustained a sprain of the neck. There was no indication of any other injuries sustained.

(Fras' Dep. at 22.) Because Dr. Fras stated that Claimant "may have" sustained a sprain of the neck, Dr. Fras' testimony in this regard is less than positive. However, when his testimony focused on Claimant's current condition, Dr. Fras was definite. Dr. Fras was unequivocal that "by the time of [his] evaluation on August 29, 2012, [Claimant] recovered from the sprain and strain, mid to low back, and any sprain of the neck that also occurred." (Fras' Dep. at 23.) Dr. Fras opined further that he "found no indication of any other injury to have occurred in association with the episode of August 14, 2011." (Fras' Dep. at 23.) Thus, while Dr. Fras' testimony does not support Claimant's allegation that the NCP is materially incorrect, the testimony as a whole unequivocally supports a conclusion that Claimant has recovered from her injuries.

Claimant also contends that Dr. Fras' testimony regarding her back was equivocal and contradictory. Claimant specifically points to the portion of Dr. Fras' report stating that "[s]traight leg raise testing bilaterally fails to provoke any radicular leg pain and is therefore to be regarded as negative. It does provoke subjective reports of back pain on the part of [Claimant] but further questioning verifies that it fails to provoke any radicular leg complaints." (Fras' Report at 3, C.R. at Item E-2.) According to Claimant, Dr. Fras' opinion was equivocal because he acknowledged that the test caused her back pain but still concluded that Claimant made a full recovery.

15

We see no equivocation in Dr. Fras' testimony regarding Claimant's back. Dr. Fras was clear that, while Claimant experienced pain in her back during the straight leg raising test, this type of pain "is a common finding and is . . . not suggestive or indicative of any particular condition." (Fras' Dep. at 16.) Dr. Fras further explained that a straight leg raising test would indicate a herniation only if the test provokes radicular leg complaints, which Claimant did not experience. We understand Dr. Fras' testimony as a whole to unequivocally support a conclusion that Claimant did not suffer from a disc herniation or any other injury to her back at the time of his evaluation.

Claimant next argues that the WCJ did not issue a reasoned Decision within the meaning of Section 422(a) of the Workers' Compensation Act[4] because the WCJ failed to adequately explain the reasons for her credibility determinations. A

[4] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 834. Section 422(a) provides:

Neither the board nor any of its members nor any [WCJ] shall be bound by the common law or statutory rules of evidence in conducting any hearing or investigation, but all findings of fact shall be based upon sufficient competent evidence to justify same. All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

Id.

16

WCJ's decision is reasoned when it "allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." Daniels v. Workers' Compensation Appeal Board (Tristate Transport), 828 A.2d 1043, 1052 (Pa. 2003). "[I]n rendering a reasoned decision in a case with conflicting evidence, the WCJ 'must adequately explain the reasons for rejecting or discrediting competent evidence.'" Id. (quoting Section 422(a) of the Act).

The WCJ's Decision provides numerous reasons for accepting Dr. Fras' testimony as fact and rejecting the testimonies of Dr. Stepanuk and Dr. Krum. The WCJ explained that: (1) Dr. Fras was the only medical expert who reviewed a comprehensive compilation of medical records; (2) Dr. Krum's testimony relied on Claimant's attestations regarding how her knee was injured, which the WCJ found incredible; (3) Dr. Stepanuk opined that Claimant was incapable of performing her normal job duties when Claimant was, in fact, working full duty both times she was examined by Dr. Stepanuk; (4) Dr. Stepanuk acknowledged that his physical examination revealed no objective finding supporting his diagnosis of lumbar radiculopathy; and (5) Dr. Fras' explanations with regard to Claimant's MRI results were more credible because Claimant continued to improve following her work injury and had returned to full duty. (FOF ¶ 8(a)-(e).) We conclude that, because the WCJ provided the above objective reasons for rejecting the portions of Dr. Krum's and Dr. Stepanuk's opinions that conflicted with the opinions of Dr. Fras, the reasoned decision requirement of Section 422(a) of the Act is plainly satisfied.

17

Finally, Claimant contends that the WCJ erred by denying Claimant's Reinstatement Petition because the WCJ employed a legal standard that is inconsistent with the standards set forth by our Supreme Court's decision in Bufford v. Workers' Compensation Appeal Board (North American Telecom), 2 A.3d 548 (Pa. 2010.) In Bufford, the Supreme Court held that "[a] claimant seeking reinstatement of suspended benefits must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." Id. at 558. Claimant argues that the WCJ required her to prove a causal connection between her disability and the work injury, and that Bufford is clear that claimants bear no such burden.

While we agree that Claimant does not bear a burden to, once again, prove her injury for purposes of her Reinstatement Petition, Bufford is clear that Claimant must prove that her current disability is affecting earning power. Id. Upon review of the WCJ's Decision, we see no instance where the WCJ required Claimant to prove a causal connection between her current disability and the work injury. The WCJ did not require such for the simple reason that the WCJ found that Claimant was not currently disabled. The WCJ found that "Claimant's disability related to her August 14, 2011 work injury did not recur effective May 30, 2012" and that "Claimant fully recovered from her work injury effective August 29, 2012." (FOF ¶¶ 10, 11.) Because these findings are supported by credible and unequivocal expert testimony, we see no error in the WCJ's Decision to deny Claimant's Reinstatement Petition.

## IV. CONCLUSION

For the foregoing reasons, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tanisha Nesmith,             :
                                 :

                 Petitioner      :
                                 :

            v.                 :     No. 532 C.D. 2015
                                 :

Workers' Compensation Appeal   :
Board (Southeastern Pennsylvania  :
Transportation Authority),       :
                                 :

               Respondent    :

## O R D E R

    **NOW**, January 8, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.


                              _____

                                **RENÉE COHN JUBELIRER, Judge**