# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holloman Corporation and Liberty Mutual,     :
:
:
Petitioners     :
: No. 976 C.D. 2015
v.     : Submitted: January 15, 2016
:
Workers' Compensation Appeal Board (Shaw),     :
:
:
Respondent     :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**            **FILED:  April 22, 2016**

Holloman Corporation (Employer) and its workers' compensation insurer petition for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of a Workers' Compensation Judge (WCJ) granting the claim petition of John Shaw (Claimant) and awarding him total disability benefits.[1]  For the reasons set forth below, we affirm.

In 2011, Claimant was employed by Employer as a heavy equipment operator assigned to various jobsites in Pennsylvania.  (WCJ Decision Finding of

---

[1] A second petition for review appealing the Board's decision was filed by separate counsel for Employer and docketed at No. 1011 C.D. 2015.  By Order dated October 2, 2015, this Court quashed that second petition for review.

Fact (F.F.) ¶¶3, 19; 12/5/11 Hearing Transcript (H.T.) at 9-10, Reproduced Record (R.R.) at 32a-33a; 4/24/13 H.T. at 59, 62-64, R.R. at 158a, 161a-163a; 5/13/13 H.T. at 54-56, R.R. at 277a-279a.) On October 18, 2011, Claimant was driving a track hoe machine in the course of his work duties at a jobsite in western Pennsylvania and collided with an energized power line. (WCJ Decision F.F. ¶¶3, 15, 19, 20; 12/5/11 H.T. at 10-11, R.R. at 33a-34a; Claimant Ex. 4 Khan Dep. Ex. 1, Employer Incident Analysis Report; Claimant Ex. 5 Booth Dep. at 20-23, 32, R.R. at 618a-621a.) At the time of the accident, Claimant was inside the cab of the track hoe and was wearing steel-toed shoes, but was not wearing gloves. (WCJ Decision F.F. ¶¶10, 19; 12/5/11 H.T. at 11, R.R. at 34a; 4/24/13 H.T. at 59, 69-70, R.R. at 158a, 168a-169a.) Employer's incident report described Claimant's injury as "electric shock" involving the "head." (WCJ Decision F.F. ¶12; 5/13/13 H.T. at 41-44, 74-78, R.R. at 264a-267a, 297a-301a; Claimant Ex. 4 Khan Dep. Ex. 1, Employer Incident Analysis Report.)

On the day of the accident, Employer took Claimant to a hospital emergency room, where he was examined and discharged, without hospitalization, with a diagnosis of electric shock and back spasm. (WCJ Decision F.F. ¶¶3, 11, 19; 12/5/11 H.T. at 13-14, 18, R.R. at 36a-37a, 41a; 4/24/13 H.T. at 70-72, R.R. at 169a-171a; 5/13/13 H.T. at 13-16, R.R. at 236a-239a; Claimant Ex. 4 Khan Dep. Ex. 2 Uniontown Hospital Records.) Claimant reported to work the next two days, but asked Employer to take him to the hospital on the second day, and Claimant was again examined and discharged without hospitalization. (WCJ Decision F.F. ¶¶3, 19; 12/5/11 H.T. at 14, 18, R.R. at 37a, 41a; 5/13/13 H.T. at 17, 19-21, R.R. at 240a, 242a-244a.) At these emergency room visits, no CT scans, MRIs or EEGs were performed. (Claimant Ex. 4 Khan Dep. Ex. 2, Uniontown Hospital

2

Emergency Department Records.) The emergency room records do not note any skin abnormalities or burns. (*Id.*)

Claimant's wife became concerned about Claimant's mental condition and ability to function and take care of himself and brought him back home with her to eastern Pennsylvania on October 31, 2011. (WCJ Decision F.F. ¶¶4, 21; 12/5/11 H.T. at 34-35, 66-67, R.R. at 57a-58a, 89a-90a.) Claimant was hospitalized from November 2, 2011 to November 4, 2011 for evaluation of altered mental status. (WCJ Decision F.F. ¶¶3, 19; 12/5/11 H.T. at 19, R.R. at 42a; Claimant Ex. 4 Khan Dep. Ex. 3 Community Medical Center Records.) A CT scan and MRI of the brain were performed and were reported as normal. (Claimant Ex. 4 Khan Dep. at 11-12, 36, R.R. at 559a-560a, 584a; Claimant Ex. 4 Khan Dep. Ex. 3 Community Medical Center Records.) An EEG was also performed and was reported as "[a]bnormal EEG with paroxysmal responses from left frontal and temporal regions with features of interictal epileptiform discharges." (Claimant Ex. 4 Khan Dep. Ex. 3 Community Medical Center Records & Employer Ex. 5 Shipkin Dep. Claimant Ex. 1, R.R. at 893a-894a; Claimant Ex. 4 Khan Dep. at 15, R.R. at 563a.) The records from this hospitalization note that Claimant had a darkened blister area on the right ear lobe and that there were "[t]iny scabbed areas that looked like [they] were blisters" elsewhere on Claimant's skin. (Claimant Ex. 4 Khan Dep. Ex. 3 Community Medical Center Records; Claimant Ex. 4 Khan Dep. at 8, R.R. at 556a.)

Claimant filed a Claim Petition on October 27, 2011, alleging that he suffered traumatic brain injury as a result of the October 18, 2011 work accident and seeking disability benefits and payment of medical bills, and Employer timely filed an answer denying liability. (Claim Petition, R.R. at 14a-19a; Employer Answer, R.R. at 20a-22a.) The WCJ held four evidentiary hearings at which

3

Claimant, Claimant's wife, Claimant's landlady, and two Employer witnesses testified. The WCJ also received testimony by trial deposition of four expert witnesses for Claimant, three expert witnesses for Employer, and one additional Employer fact witness. In these proceedings, Employer did not dispute that Claimant's track hoe collided with an energized power line and this accident was work-related. The issues in dispute were whether Claimant received an electric shock in the accident, what, if any, injuries Claimant suffered from the accident, and whether Claimant was disabled.

Claimant testified that his track hoe hit the power line, that the power line came down, and that "I felt the current come through the machine and out of it." (12/5/11 H.T. at 11, R.R. at 34a.) Claimant testified that after the accident, he had a spot on his ear that was bleeding. (*Id.* at 12-13, R.R. at 35a-36a.) Claimant's wife testified that when she came to see him after the accident, she saw a blister on Claimant's right ear and blisters on his buttocks and that his hands and feet were bright red like they were sunburned. (4/24/13 H.T. at 43-44, R.R. at 142a-143a.) Claimant and his wife testified that Claimant was confused and had difficulty doing ordinary tasks after the accident and that he also suffered back pain, muscle spasms, headaches, and incontinence after the accident. (12/5/11 H.T. at 12, 18, 34-37, 49-51, 61, 67, R.R. at 35a, 41a, 57a-60a, 72a-74a, 84a, 90a; 4/24/13 H.T. at 54, 57, 60, 72-74, 76, 79-80, R.R. at 153a, 156a, 159a, 171a-173a, 175a, 178a-179a.) Claimant described feeling that "I haven't been right" and testified that he has trouble remembering things and putting what he wants to say in words. (12/5/11 H.T. at 12, R.R. at 35a; 4/24/13 H.T. at 54, 60, 72-74, 76, R.R. at 153a, 159a, 171a-173a, 175a.) Claimant's wife testified that before the accident Claimant put things around the house away properly and that when she came to see him the second weekend after the accident, Claimant's trailer was in disarray, with

4

food that must be kept cold in unrefrigerated cabinets. (12/5/11 H.T. at 34-35, 49-51, R.R. at 57a-58a, 72a-74a; 4/24/13 H.T. at 46, R.R. at 145a.) Claimant's wife also testified that after the accident, Claimant had trouble remembering things and concentrating and talked like "he was drunk." (4/24/13 H.T. at 45-48, R.R. at 144a-147a.) Claimant's landlady testified that Claimant acted professional and communicated without difficulty with her before the accident, but that after the accident, he did not speak the same way and appeared "retarded." (4/24/13 H.T. at 10-16, 18-21, 36-38, R.R. at 109a-115a, 117a-120a, 135a-137a.)

None of Employer's witnesses was present when the accident occurred. (5/13/13 H.T. at 30, 70-71, R.R. at 253a, 293a-294a; Employer Ex. 4 Kitzman Dep. at 13-14, R.R. at 825a-826a.) Employer's safety coordinator testified that he was called to the job site after the accident and took Claimant to the hospital. (5/13/13 H.T. at 11-14, R.R. at 234a-237a.) The safety coordinator testified that when he arrived at the accident scene Claimant "looked kind of scared" and did not say much. (*Id.* at 13-14, R.R. at 236a-237a.) The safety coordinator felt that it was necessary that Claimant go to the hospital, although Claimant "seemed all right" and "said he was all right." (*Id.* at 13-15, 38-39, R.R. at 236a-238a, 261a-262a.) The safety coordinator also testified that he took Claimant to the hospital again two days after the accident when Claimant reported that he was having spasms. (*Id.* at 19-20, R.R. at 242a-243a.) The safety coordinator and Employer's safety manager, who came to the site the day after the accident, testified that they conducted an investigation of the accident and classified it as involving an electric shock injury to the head. (*Id.* at 17-19, 39-44, 57, 65-66, 72-78, R.R. at 240a-242a, 262a-267a, 280a, 288a-289a, 295a-301a; Claimant Ex. 4 Khan Dep. Ex. 1, Employer Incident Analysis Report.) A mechanic who works for Employer testified that he inspected the track hoe the

5

evening after the accident, that its electronic and computer systems were not damaged, and that he did not see any pitting or scorch or burn marks to the track hoe. (Employer Ex. 4 Kitzman Dep. at 7-9, 22-23, R.R. at 819a-821a, 834a-835a.)

Claimant introduced testimony of three expert witnesses concerning his mental and physical condition and its relation to the accident. Abby Barr, Ph.D., a neuropsychologist, testified that she administered cognitive screening tests and neuropsychological tests to Claimant that showed impairments in attention, memory, language, and executive functioning. (Claimant Ex. 2 Barr Dep. at 6-9, 14-17, 23-24, 39-44, R.R. at 348a-351a, 356a-359a, 365a-366a, 381a-386a.) Neuropsychologist Barr opined, based on these tests, her interviews and behavioral observations of Claimant, and review of Claimant's school records, that Claimant suffered from moderate cognitive impairment, that this cognitive impairment was a type of injury caused by electric shock and was caused by the October 18, 2011 accident, and that Claimant could not perform his job with Employer or the alternative positions offered by Employer. (*Id.* at 23-44, 47-53, R.R. at 365a-386a, 389a-395a.) Neuropsychologist Barr further testified that cognitive injuries from electric shock can manifest themselves two days to two weeks after the event. (*Id.* at 67, R.R. at 409a.)

Dr. Iqbal Khan, the neurologist who examined Claimant in his November 2011 hospitalization, testified that the EEG performed in that hospitalization showed abnormalities in the left frontal and temporal region of Claimant's brain that were consistent with the cognitive deficits found in the neuropsychological tests. (Claimant Ex. 4 Khan Dep. at 5, 10-13, 15-17, R.R. at 553a, 558a-561a, 563a-565a.) Dr. Khan opined that Claimant suffered from cognitive dysfunction caused by an electrical brain injury in his work accident and that Claimant was not capable of performing his pre-injury job. (*Id.* at 18-19, 21-

6

24, R.R. at 566a-567a, 569a-572a.) Dr. Peter Cognetti, a family practice physician who treated Claimant after the November 2011 hospitalization, testified that Claimant suffered from cognitive dysfunction, acute lower back syndrome, acute cervical injury, post-traumatic vascular headaches, and gastrointestinal disturbances. (Claimant Ex. 3 Cognetti Dep. at 5-6, 10, 28-29, R.R. at 471a-472a, 476a, 494a-495a.) Dr. Cognetti opined that these conditions were a direct result of electrical injury in the October 18, 2011 accident and that Claimant was not able to work as a result of these conditions. (*Id.* at 29-33, R.R. at 495a-499a.) All of Claimant's medical expert witnesses testified that their opinions were predicated on the understanding that Claimant received an electric shock in the accident. (Claimant Ex. 2 Barr Dep. at 61, R.R. at 403a; Claimant Ex. 4 Khan Dep. at 47-48, R.R. at 595a-596a; Claimant Ex. 3 Cognetti Dep. at 48, R.R. at 514a.)

Employer presented expert testimony from two medical witnesses who examined Claimant on its behalf, Dr. Paul Shipkin, a neurologist, and Dr. Robert DeSilverio, a psychiatrist. Both opined that Claimant did not suffer any cognitive injury as a result of the accident and that Claimant was capable of returning to work without restrictions. (Employer Ex. 5 Shipkin Dep. at 5-7, 17-49, R.R. at 842a-843a, 845a-853a; Employer Ex. 6 DeSilverio Dep. at 6, 34-40, R.R. at 900a, 928a-934a.) Dr. Shipkin also testified that there is documentation in the medical literature of late onset of neurological problems following an electrical injury. (Employer Ex. 5 Shipkin Dep. at 78, R.R. at 861a.)

Both Claimant and Employer submitted expert testimony from electrical engineers. Claimant's engineering expert, Gregory Booth, P.E., testified that the track hoe cab was not grounded or insulated from the electrical current that flowed into the track hoe when it hit the power line and that there were step and touch potential differences within the cab due to the different materials in the cab

7

that would cause electric current to flow through the occupant's body. (Claimant Ex. 5 Booth Dep. at 20-21, 30-34, 37, 43, 52-54, R.R. at 618a-619a, 628a-632a, 635a, 641a, 650a-652a.) Booth testified that when Claimant's track hoe collided with the power line "those step and touch potential differences would cause current to flow through his body," that "[a]ny operator, Mr. Shaw [Claimant] in this case, would see potential differences in the control cabinet" and that "[t]hose potential differences would drive current flow at the various locations through his body." (*Id.* at 48-51, R.R. at 646a-649a.) Booth further opined that the flow of electric current through the cab would not normally cause damage to the track hoe's electrical system. (*Id.* at 32-33, 40-41, 51-52, R.R. at 630a-631a, 638a-639a, 649a-650a.)

Employer's engineering expert, Samuel Sudler, III, P.E., opined that the track hoe was grounded and insulated the occupant from the electric charge from the power line and that Claimant therefore could not have received an electric shock in the accident. (Employer Ex. 7 Sudler Dep. at 26-31, 34-35, 50-51, 59-60, 69-70, 72, R.R. at 992a-994a, 998a, 1000a, 1002a-1003a.) Sudler also testified that the absence of damage to the track hoe's electrical system supported his opinion that no electric shock went through the cab. (*Id.* at 24-29, 54, 56-60, R.R. at 991a-992a, 999a-1000a.)

On March 18, 2014, the WCJ issued a decision granting Claimant's Claim Petition. The WCJ found the testimony of Claimant, Claimant's wife and Claimant's landlady credible. (WCJ Decision F.F. ¶¶19, 21-22.) The WCJ found the testimony of Employer's safety coordinator and safety manager to be of limited value because they did not witness the accident, and rejected the testimony of Employer's mechanic, noting that his testimony that there was no damage to the track hoe was inconsistent with the photographic evidence attached to the

8

engineering experts' depositions. (*Id.* F.F. ¶¶27-28.) With respect to expert witnesses, the WCJ found Claimant's medical experts credible, noting with respect to neuropsychologist Barr that her testimony was supported by objective tests and that she was treating Claimant and noting that Drs. Khan and Cognetti were treating physicians. (*Id.* F.F. ¶¶24, 26.) The WCJ rejected the testimony of Employer's expert Dr. DeSilverio as not credible based on his expression of engineering opinions outside his medical expertise and his failure to perform any testing of Claimant, and found Dr. Shipkin less credible than Claimant's experts to the extent that his testimony conflicted with their testimony because he saw Claimant only once and was not a treating physician. (*Id.* F.F. ¶¶23, 25.) The WCJ found the testimony of Claimant's electrical engineering expert Booth more credible than Employer expert Sudler's testimony, finding that Booth's explanation of the step and touch potentials in the track hoe explained how such a shock could occur and that Sudler appeared to have started from the presumption that a shock could not occur. (*Id.* F.F. ¶20.)

The WCJ determined that Claimant was injured in the October 18, 2011 workplace accident, and described the work injury as "cognitive dysfunction, lower back pain, cervical injury, and muscle spasm, post-traumatic vascular headaches, and gastrointestinal disturbances." (WCJ Decision ¶30, Conclusion of Law (C.L.) ¶2.) The WCJ further concluded that Claimant was disabled by this work injury and awarded Claimant temporary total disability benefits. (*Id.* F.F. ¶31, C.L. ¶¶2-3.) Employer appealed, and the Board affirmed, holding that Claimant's experts' testimony was competent and that Claimant sustained his

9

burden of proving his work-related injury and disability. (Board Opinion at 10-13.) This appeal followed.[2]

Under the Workers' Compensation Act,[3] the burden in a claim petition proceeding is on the claimant to prove that he has suffered a work-related injury and that he is disabled by that injury. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993); *Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d 684, 689-90 (Pa. Cmwlth. 2011); *Reyes v. Workers' Compensation Appeal Board (AMTEC)*, 967 A.2d 1071, 1077 (Pa. Cmwlth. 2009) (*en banc*). Where the connection between a workplace accident and the claimant's injury or disability is not obvious, the claimant must prove the causal link by unequivocal medical expert testimony. *Moyer v. Workers' Compensation Appeal Board (Pocono Mountain School District)*, 976 A.2d 597, 599 n.3 (Pa. Cmwlth. 2009); *Reyes*, 967 A.2d at 1077.

Employer does not dispute that Claimant's track hoe collided with an energized power line or that the accident was work-related. Employer also does not dispute that Claimant's medical experts testified unequivocally that Claimant's injuries and disability were caused by the accident. Rather, Employer argues that the WCJ's decision and the Board's affirmance must be reversed because there was allegedly no competent evidence that Claimant received an electric shock and that Claimant's medical experts' opinions were therefore rendered incompetent

---

[2] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence or whether constitutional rights were violated. *BJ's Wholesale Club v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559, 562 n.1 (Pa. Cmwlth. 2012).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

10

because they were predicated on the assumption that Claimant received an electric shock in the accident.

Employer's argument fails for two reasons. First, the WCJ's factual finding that Claimant sustained an electric shock was not dependent on expert opinion. Claimant testified that he felt electric current come through the machine and Employer admitted in its incident report following its investigation that Claimant suffered an electric shock to his head. (12/5/11 H.T. at 11, R.R. at 34a; 5/13/13 H.T. at 40-44, 72-78, R.R. at 263a-267a, 295a-301a; Claimant Ex. 4 Khan Dep. Ex. 1, Employer Incident Analysis Report.) The WCJ found this evidence credible. (WCJ Decision F.F. ¶¶3, 12, 19; Board Opinion at 9.) Employer cites no case law holding that lay witnesses are incapable of perceiving and testifying to whether they felt an electric shock. Engineering expert testimony was certainly relevant on the issue of whether electric current from the power line could have reached Claimant in the cab of the track hoe to rebut or explain the lay evidence, but that was in the nature of a defensive argument raised by Employer to negate Claimant's proof or additional support of Claimant's contention, not a matter on which the Claimant bore the burden of introducing evidence.

Second, Claimant introduced expert testimony sufficient to support the WCJ's finding that he sustained an electric shock in the accident. For expert testimony to be competent evidence on which a WCJ may base findings of fact, it must be unequivocal. *BJ's Wholesale Club v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559, 564 (Pa. Cmwlth. 2012); *Potere*, 21 A.3d at 691; *see also Betz v. Erie Insurance Exchange*, 957 A.2d 1244, 1258 (Pa. Super. 2008) (for engineering expert testimony to be competent, expert must testify with reasonable certainty). Expert testimony is unequivocal where the expert testifies that in his professional opinion he believes or thinks that the facts to which he

11

testifies exist; if, however, the expert opines only that those facts could or may exist or are possible, such testimony is equivocal and incompetent. *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012); *Campbell v. Workers' Compensation Appeal Board (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). An expert is not required to use specific "magic words" for his opinion to be found unequivocal. *Moyer*, 976 A.2d at 599; *Campbell*, 954 A.2d at 730. Whether an expert's testimony is unequivocal must be determined from review of the testimony as a whole and is a question of law for the Court to decide. *Potere*, 21 A.3d at 690; *Moyer*, 976 A.2d at 599 & n.3; *Campbell*, 954 A.2d at 730.

Contrary to Employer's contentions, Claimant's engineering expert's testimony was unequivocal. Booth testified that his opinions were to a reasonable degree of professional certainty. (Claimant Ex. 5 Booth Dep. at 47-52, R.R. at 645a-650a.) Booth testified that it was his opinion that electric current flowed into Claimant's body when the track hoe became energized in the collision with the power line:

> Q. … [D]o you have an opinion within a reasonable degree of electrical engineering certainty as to whether the 12,000/7,200 volt distribution transferred or interacted with the Link Belt [track hoe] machine being operated by Mr. Shaw [Claimant]?
>
> A. Yes.
>
> Q. And what is your opinion?
>
> A. My opinion is that the interaction was excessive current flow as fault current was flowing through the Link Belt track hoe, that it had a potential difference imposed all the way across the track hoe to ground, and that there were a variety of potential differences that would've existed throughout the track hoe, most particularly in the control cabinet on the various pieces of control hold items, both the pedals and

12

gears; and that those potential differences being touched by a human being, in this case Mr. Shaw, would have imposed both touch and step potential difference on Mr. Shaw's body. And those step and touch potential differences would cause current to flow through his body causing physical injury and harm.

Q. Mr. Booth, again, based upon the aforementioned, do you have an opinion within a reasonable degree of electrical engineering certainty as to whether the 12,000/7,200 volt power distribution transferred to the Link Belt did create or result in electrical shock to Mr. Shaw while he operated the Link Belt while seated in the control cabinet?

MS. CALLAHAN: Just note an objection as to the form. You can answer.

THE WITNESS: Yes.

BY MR. VAZOUEZ:

Q . What is your opinion?

                    *              *              *

THE WITNESS: … The Link Belt contacted a phase conductor 7,200 volts to the ground, that imposed 7,200 volts and associated fault current flowing through the Link Belt. Any operator, Mr. Shaw in this case, would see potential differences in the control cabinet being in contact both on his feet and his hands with objects in that control cabinet. Those potential differences would drive current flow at the various locations through his body. That current would cause electrical injury and heating injury to a human body by driving current levels from a high voltage line into a human being, in this case Mr. Shaw.

(*Id.* at 48-51, R.R. at 646a-649a) (emphasis added).  The fact that Booth used the verb "would" does not make his opinion uncertain.  Rather, it describes a definite consequence that occurs as a result of a situation, here the current flowing into the

13

track hoe.  *See Reinforced Molding Corp. v. Workers' Compensation Appeal Board (Haney)*, 717 A.2d 1096, 1100-01 (Pa. Cmwlth. 1998) (opinion that claimant if he returned to work "would develop symptoms" of worsening breathing problems and that he would be prevented from ever going back to his pre-injury job was unequivocal and competent); *Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 849-52 (Pa. Super. 2012) (engineering expert testimony that rust would have alerted defendant to need for further inspection and that deformation of bolt would not have been caused by the accident was  competent).

Employer's repeated assertions that Booth testified only that it was "possible" that Claimant received an electric shock are unsupported by the record. Nowhere in any of Booth's testimony did he opine or suggest that he thought that the flow of electric current into Claimant's body was a mere possibility rather than an automatic consequence of the collision with the power line.  Indeed, Employer does not point to any place in Booth's testimony where he uses words of uncertainty such as "could," "may," might," "possible," or "possibility," in his opinions concerning whether Claimant received an electric shock or cite to anything in Booth's testimony in support of these assertions.   Instead, its contentions that Booth opined only that an electric shock was "possible" are based, not on anything in Booth's testimony, but on language in the WCJ's decision in his comparison of Booth's testimony to Employer's expert's testimony. It is the expert's actual testimony that we examine in determining whether it is unequivocal, not Employer's or the WCJ's characterizations of that testimony.

Moreover, Employer's assertion that the WCJ found that Booth testified only that an electric shock was possible is not even correct.  The WCJ did state in evaluating Booth's testimony:

14

> Mr. Booth testifies in terms of the fact that such a shock was possible given the step potential differences between the various surfaces in the Claimant's immediate environment. This Judge notes that Mr. Booth does not one hundred (100%) percent flat-out say that a shock did occur. Mr. Booth states that such a shock was possible.

(WCJ Decision F.F. ¶20.) These statements were made to contrast Booth's testimony with the testimony of Employer's expert, whom he found rigidly certain of the result that he wished to reach and therefore not credible. However, the WCJ also made clear he understood that Booth testified that Claimant in fact received an electric shock, noting that "Mr. Booth testified that it was his opinion that the Claimant had received a shock from striking a power-line" and "Claimant has presented the testimony of Mr. Booth, an electrical engineer, who said that the Claimant did receive a shock." (*Id.* F.F. ¶¶15, 20.)

Employer also argues that the WCJ erred in failing to grant a motion it filed in July 2013 seeking to exclude Booth's deposition on the ground that photographs of the accident site taken on Claimant's behalf for a third-party action were not provided to Employer before the engineering experts' reports and depositions. Employer did not raise this issue in its appeal to the Board. In its two appeals to the Board, Employer's only claims of error concerned the competency of Claimant's experts' testimony, the sufficiency of the evidence to support the WCJ's findings, the WCJ's conclusions of law and whether the WCJ appropriately considered all of the evidence in the record. (4/3/14 Employer Appeal, R.R. at 1130a-1131a; 4/8/14 Employer Appeal; Board Opinion at 2.) Utterly absent from these appeals was any claim of error in failing to grant any motion to preclude evidence or any claim of prejudice from delayed disclosure of photographs or other evidence. The law is clear that issues not raised in a party's appeal to the Board are waived and cannot be considered by this Court. *CVA, Inc. v. Workers'*

*Compensation Appeal Board (Riley)*, 29 A.3d 1224, 1230 (Pa. Cmwlth. 2011); *Marx v. Workers' Compensation Appeal Board (United Parcel Service)*, 990 A.2d 107, 111 (Pa. Cmwlth. 2010). Employer is therefore barred from seeking reversal of the WCJ's or Board's decisions on this ground.

In sum, Claimant presented competent evidence that he suffered an electric shock in his October 18, 2011 workplace accident, that he suffered the injuries and disability found by the WCJ, and that his injuries and disability were caused by the workplace accident. The WCJ found that evidence credible. The WCJ has exclusive province over questions of credibility and evidentiary weight, and may accept or reject the testimony of any witness, including expert witnesses, in whole or in part. *Potere*, 21 A.3d at 690; *Anderson v. Workers' Compensation Appeal Board (Penn Center for Rehab)*, 15 A.3d 944, 949 (Pa. Cmwlth. 2010). There is no basis to disturb the WCJ's credibility determinations and factual findings here.

Accordingly, we affirm the decision of the Board.

_____
JAMES GARDNER COLINS, Senior Judge


Judge Cohn Jubelirer concurs in the result only.

16

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holloman Corporation and Liberty     :
Mutual,     :
    :
          Petitioners     :
    :
         v.     : No. 976 C.D. 2015
    :
Workers' Compensation Appeal Board     :
(Shaw),     :
    :
          Respondent     :

## **O R D E R**

AND NOW, this 22nd day of April, 2016, the order of the Workers'
Compensation Appeal Board in the above matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge