**John POTERE, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KEM-CORP), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 10, 2010.

Decided May 20, 2011.

Richard R. Di Stefano, Philadelphia, for petitioner.

Karyn Dobroskey Rienzi, Philadelphia, for respondent Kemcorp.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McCULLOUGH.

John Potere (Claimant) petitions for review of the June 8, 2010, order of the Workers' Compensation Appeal Board (Board), which affirmed as modified the June 18, 2009, decision of a Workers' Compensation Judge (WCJ) granting Claimant's claim petition for the closed period from January 22, 2005, through April 12, 2005. We now affirm in part and vacate and remand in part.

Claimant worked as a tractor trailer driver for Kemcorp (Employer). On January 22, 2005, Claimant's tractor trailer struck a snow bank and a concrete barrier after Claimant swerved to avoid a collision with automobiles on an icy road. Claimant reported the accident to Employer but was able to drive home. Claimant later experienced stiffness in his neck and back, as

well as numbness and tingling in his legs and in the bottom of his feet. Claimant began treatment with Raymond P. Rogowski, D.C., and did not return to work. (WCJ's Decision, July 28, 2006 (2006), Findings of Fact Nos. 1, 4(b), 4(c).)

On February 10, 2005, Employer issued a notice of temporary compensation payable (NTCP) accepting liability for Claimant's medical expenses and indemnity benefits. On March 17, 2005, Claimant attended an independent medical examination (IME) with Neil Kahanovitz, M.D. Dr. Kahanovitz described the IME as objectively normal. On March 28, 2005, Employer sent Claimant a notice of ability to return to work. Employer thereafter sent Claimant a letter dated April 13, 2005, requesting that he return to his pre-injury position no later than April 20, 2005. Claimant called and advised Employer that he was not capable of performing his pre-injury position, and he did not return to work. Employer simultaneously issued a notice stopping temporary compensation and a notice of workers' compensation denial (NCD), the latter notice citing a lack of medical documentation of any ongoing disability and Claimant's failure to return to work. (2006 Findings of Fact Nos. 1, 2.)

On April 28, 2005, Claimant filed a claim petition alleging that he was totally disabled from January 23, 2005, to April 21, 2005. Employer filed an answer acknowledging that an injury took place, but denying that the injury caused a compensable disability. The case was assigned to a WCJ for hearings. Claimant testified regarding the January 22, 2005, accident, his complaints of pain, and his subsequent treatment by Dr. Rogowski, his chiropractor. Claimant acknowledged that he declined Employer's offer to return to his pre-injury position in April of 2005. Claimant also indicated that he received

physical therapy some time after his examination by Dr. Kahanovitz. (2006 Findings of Fact Nos. 3, 4(a)-(c), (d), (f).)

Claimant also presented the deposition testimony of James Bonner, M.D., who began treating Claimant on May 24, 2005. Dr. Bonner ordered several diagnostic studies, including a lumbar MRI which was normal, a cervical MRI which revealed no herniations but did show impingement at C3–4, and an EMG which was also normal. Following a functional capacity evaluation, Dr. Bonner restricted Claimant to light duty work. Dr. Bonner diagnosed Claimant as suffering from chronic pain of the musculoligamentous structures of the cervical, thoracic, and lumbar spine with a bulging cervical disc and opined that Claimant had not fully recovered from his original work injury. On cross-examination, Dr. Bonner indicated that there was a significant psychological and subjective component to Claimant's disability. (2006 Findings of Fact Nos. 5, 5(b)-(e).)

Claimant also presented the deposition testimony of Jane Jones, a claims representative from Lincoln General Insurance Company, Employer's workers' compensation insurance carrier. Jones did not dispute that Claimant incurred a work-related injury. Jones testified that she originally issued the NTCP and that she later issued the notice stopping the same and the NCD based on a lack of documentation supporting Claimant's alleged ongoing disability, the offer of work consistent with Dr. Kahanovitz' IME report, and Claimant's failure to return to work. Jones explained that Employer extended a job offer to Claimant on April 13, 2005. (2006 Findings of Fact Nos. 6, 6(a)-(d).)

In opposition to Claimant's claim petition, Employer presented the deposition testimony of Dr. Kahanovitz. Dr. Kahanovitz testified that Claimant's March 17, 2005, examination revealed no evidence of

neurological abnormalities and no objective evidence of any orthopedic abnormalities. At that time, Dr. Kahanovitz diagnosed Claimant as suffering from a cervical/thoracic/lumbar strain, and he recommended that Claimant undergo an exercise-oriented physical therapy program.[1] Dr. Kahanovitz opined that Claimant should be able to return to full duty upon completion of four weeks of physical therapy. Dr. Kahanovitz explained that he believed that Claimant was able to return to full duty as of the time of his examination, but that he recommended that Claimant undergo physical therapy as a prophylactic and preventative measure because of the vibration involved in driving a tractor trailer. (2006 Findings of Fact Nos. 7(c)-(e).)

Dr. Kahanovitz indicated that he reviewed EMG and MRI studies conducted in June of 2005 and that these studies were essentially normal and consistent with his opinion. On cross-examination, Dr. Kahanovitz again explained that his recommendation that Claimant undergo physical therapy prior to returning to work was designed to prevent re-injury upon Claimant's return to full duty, which involved lifting and mechanical vibrations. On re-direct examination, Dr. Kahanovitz testified that there was no need to reevaluate Claimant after the physical therapy because it was suggested as a preventative and prophylactic measure given Claimant's job duties. (2006 Findings of Fact Nos. 7(f)-(h).)

The WCJ accepted the testimony of Dr. Kahanovitz as more credible and persuasive than the contrary testimony of Dr. Bonner, accepted the testimony of Jones as credible, and rejected Claimant's testimony regarding his subjective complaints and his inability to perform his pre-injury position. Based upon the credible testimony of Dr. Kahanovitz, the WCJ found that Claimant's injury consisted of a cervical/thoracic/lumbar sprain and/or strain from which Claimant had recovered as of March 17, 2005. (2006 Findings of Fact Nos. 8–11.) Further, the WCJ concluded that Claimant had not sustained his burden of proving any ongoing disability beyond April 20, 2005. Thus, the WCJ denied Claimant's claim petition and directed that all benefits be terminated as of March 17, 2005.

Claimant appealed to the Board, which affirmed in part and reversed and remanded in part. The Board affirmed the WCJ's decision insofar as the WCJ rejected Claimant's medical evidence. However, the Board reversed the WCJ's denial of Claimant's claim petition and his conclusion that Claimant had fully recovered from his work injuries and remanded for further consideration of Employer's medical evidence. The Board stated that since Employer admitted that Claimant suffered a work-related injury, the WCJ should have granted Claimant's claim petition and determined the extent of his disability. The Board noted that the evidence of record established that Claimant was at least disabled from January 22, 2005, to March 17, 2005, and that Employer only ceased paying wage loss benefits on April 20, 2005.

The Board concluded that the record lacked substantial, competent evidence to support the WCJ's finding that Claimant was fully recovered from his injury because the testimony of Dr. Kahanovitz, upon which the WCJ relied, was speculative and legally insufficient to support such a finding. The Board held that the WCJ failed to address critical issues regarding the testimony of Dr. Kahanovitz and whether Claimant's wage loss benefits should be suspended. Regarding the for-

1. Claimant underwent physical therapy from mid-April to mid-May 2005.

mer, the Board indicated that the WCJ did not render a credibility determination with respect to certain testimony from Dr. Kahanovitz which appeared to state that Claimant was only capable of light to moderate work as of March 17, 2005. Hence, the Board remanded the matter to the WCJ for a more complete credibility determination regarding the testimony of Dr. Kahanovitz as well as for additional findings regarding Claimant's alleged ongoing disability.

On remand, the WCJ found that Claimant was capable of returning to his pre-injury position as of March 17, 2005. (WCJ's Decision, June 18, 2009 (2009), Finding of Fact No. 7.) The WCJ again relied upon the testimony of Dr. Kahanovitz in rendering this finding, explaining that Dr. Kahanovitz only recommended light duty and physical therapy for Claimant to prevent a re-injury upon Claimant's return to work, and not because Dr. Kahanovitz considered Claimant physically or medically incapable of performing his pre-injury position, without restrictions, as of March 17, 2005. (2009 Finding of Fact No. 8.) The WCJ specifically rejected as not credible that portion of the testimony of Dr. Kahanovitz that could be interpreted to mean that Claimant required physical therapy or was restricted to light duty because he had not sufficiently recovered from his work injury to return to his pre-injury position as of March 17, 2005. (2009 Findings of Fact Nos. 9–10.)

Further, the WCJ found that Employer offered Claimant his full-duty, pre-injury position on April 13, 2005, but that Claimant refused Employer's offer. (2009 Findings of Fact Nos. 11–12.) The WCJ con-

cluded that Claimant sustained his burden of establishing a work-related injury but that Employer rebutted Claimant's evidence with respect to Claimant's ongoing disability as of April 13, 2005, the date Claimant refused Employer's job offer. The WCJ also concluded that Claimant was capable of returning to his pre-injury position, without restrictions, as of March 17, 2005. Hence, the WCJ granted Claimant's claim petition but directed that wage loss benefits be suspended as of April 13, 2005.

Claimant again appealed to the Board, which affirmed with a modification of the suspension date to April 14, 2005. In his appeal to the Board, Claimant also argued that the WCJ erred in failing to find a violation of the Workers' Compensation Act (Act).[2] More specifically, Claimant alleged that Employer should have filed a notice of compensation payable (NCP) instead of a NCD in light of Employer's acceptance that he sustained a work-related injury. However, the Board rejected this argument, concluding that Employer's actions were proper under the Act.

■■■ On appeal to this Court,[3] Claimant first argues that the Board erred in affirming the WCJ's suspension of benefits because the testimony of Dr. Kahanovitz was equivocal with respect to the issues of Claimant's full recovery and his ability to return to work as of March 17, 2005, the date of the IME. We agree.

■■■ In an original claim petition, a claimant bears the burden of proving all of the elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal Board*

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

**3.** Our scope of review is limited to determining whether findings of fact were supported by substantial evidence, whether an error of

law was committed or whether constitutional rights were violated. *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer),* 894 A.2d 214 (Pa.Cmwlth.2006).

*(Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). Thus, a claimant must establish that he sustained an injury during the course of his employment and that he is disabled as a result of that injury. *Id.* For purposes of workers' compensation benefits, the term disability is synonymous with loss of earning power. *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939 (Pa.Cmwlth.2008). The claimant's burden to prove disability never shifts to the employer and this burden remains with the claimant throughout the pendency of the claim petition. *Coyne; Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa. Cmwlth.141, 646 A.2d 51 (1994), *appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995).

 Even when an employer issues a notice of compensation denial which acknowledges an injury but disputes disability, the claimant maintains the burden to prove he is entitled to benefits. *Morrison v. Workers' Compensation Appeal Board (Rothman Institute)*, 15 A.3d 93 (Pa. Cmwlth.2010). Moreover, if the WCJ determines that the evidence supports a finding of disability only for a closed period, the WCJ is free to make such a finding. *Milner v. Workers' Compensation Appeal Board (Main Line Endoscopy Center)*, 995 A.2d 492 (Pa.Cmwlth.2010).

Employer asserts that those portions of Dr. Kahanovitz' testimony found credible by the WCJ were unequivocal and sufficient to support a suspension of Claimant's benefits. Employer characterizes Claimant's argument as nothing more than an impermissible attack on the WCJ's credibility determinations. However, Employer confuses the distinct concepts of credibility and equivocality.

 The law is well settled that the WCJ, as fact finder, has exclusive power over questions of credibility and evidentiary weight, that the WCJ may reject the testimony of any witness in whole or in part, and that such determinations are not subject to appellate review. *Joy Global, Inc. v. Workers' Compensation Appeal Board (Hogue)*, 876 A.2d 1098 (Pa.Cmwlth. 2005). However, a WCJ's credibility determination cannot serve to preclude this Court from determining whether an expert's testimony was equivocal. The law is equally well settled that questions relating to the equivocality of an expert's testimony are questions of law fully subject to this Court's review. *Stalworth v. Workers' Compensation Appeal Board (County of Delaware)*, 815 A.2d 23 (Pa.Cmwlth.2002) (holding that while questions of credibility are solely for the WCJ, the reviewing court can and should evaluate the competency of testimony). Moreover, whether or not medical evidence is equivocal involves a determination of its competency, not its credibility. *Heath v. Workmen's Compensation Appeal Board (Agway, Inc.)*, 100 Pa.Cmwlth.524, 514 A.2d 1021 (1986) (holding that while the WCJ is the ultimate arbiter of credibility, the reviewing court has a duty to review the record to determine whether the medical evidence was unequivocal).

 Indeed, in *Benson v. Workmen's Compensation Appeal Board (Haverford State Hospital)*, 668 A.2d 244 (Pa. Cmwlth.1995), we indicated that even if the entire testimony of the claimant's medical expert had been accepted as credible by the WCJ, it was equivocal and would have been insufficient to support an award reinstating benefits. Medical testimony is equivocal if it is less than positive or merely based upon possibilities. *Lewis v. Workmen's Compensation Appeal Board*, 508 Pa. 360, 498 A.2d 800 (1985). In determining whether the medical testimony is equivocal, we must review the medical testimony as a whole. *Johnson v. Workers' Compensation Appeal Board (Abing-*

*ton Memorial Hospital)*, 816 A.2d 1262, 1268 (Pa.Cmwlth.2003). Medical testimony will be deemed incompetent if it is equivocal. *Coyne.*

In the present case, a review of Dr. Kahanovitz' entire testimony reveals that it comprises contradictory opinions. For example, Dr. Kahanovitz opined that, as of March 17, 2005, the date of the IME, Claimant was "able to work in a light to moderate setting" and "that should be changed in approximately four weeks to a full-duty return to work without restrictions once he had undergone a physical therapy program...."[4] (R.R. at 113a.) Additionally, on cross-examination, Dr. Kahanovitz acknowledged that he placed restrictions on Claimant following the March 17, 2005, IME and that these restrictions were related to Claimant's work injuries. (R.R. at 125a.)

However, Dr. Kahanovitz also opined that, "in the absence of any objective abnormality on physical examination or diagnostic studies that would indicate a permanent injury that [Claimant] would be able to and should be able to return to work as a tractor trailer driver" as of March 17, 2005. (R.R. at 116a.) Dr. Kahanovitz later explained that he originally released Claimant to partial duty "because of the excessive amount of vibration involved in driving a tractor trailer as well as the repetitive lifting and bending." (R.R. at 130a.) Further, Dr. Kahanovitz described the physical therapy he recommended for Claimant as a "prophylactic and preventative exercise program given [Claimant's]

work" and his absence from such work for several months. (R.R. at 114a, 130a–31a.)

Certainly, these contradictory opinions render Dr. Kahanovitz' testimony less than positive, and, hence, equivocal. Thus, the WCJ erred in relying on Dr. Kahanovitz' testimony to find that Claimant was capable of returning to his pre-injury job, without restrictions, as of March 17, 2005, and the Board erred in affirming the WCJ's decision. As previously indicated, however, the burden was on Claimant to establish disability throughout the pendency of his claim petition. *Innovative Spaces.* While the WCJ rejected the testimony of Claimant and his medical expert, Dr. Bonner, as not credible, the WCJ did so on the basis of the testimony of Dr. Kahanovitz, which he deemed credible. In light of our conclusion above, a remand to the WCJ is necessary to address this evidence without regard to Dr. Kahanovitz' testimony.

■ Next, Claimant argues that the Board erred in failing to conclude that Employer's issuance of the NCD constituted an illegal supersedeas. We disagree.

Generally, an employer must issue an NCP or NCD within twenty-one days of notice of a work injury. Section 406.1(a) of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 717.1(a); *Armstrong v. Workers' Compensation Appeal Board (Haines & Kibblehouse, Inc.)*, 931 A.2d 827 (Pa.Cmwlth. 2007). Where an employer is uncertain whether a claim is compensable or is uncertain of the extent of its liability under

---

4. Employer obviously believed that Dr. Kahanovitz was initially releasing Claimant to light to moderate duty. Employer stated in the notice of ability to return to work that, as of March 17, 2005, Dr. Kahanovitz felt that Claimant was "capable of returning to work within a light to moderate duty setting. You are then released to return to work full duty without restriction effective April 14, 2005,

which is 12 weeks post your soft tissue type injury." (R.R. at 84a.) Employer reiterated the same in its notice of workers' compensation denial, which provided that Claimant was released to return to work effective March 17, 2005, "within a medium demand work level" and was "given a full unrestricted release effective 4/14/ 2005." (R.R. at 90a.)

the Act, the employer may comply with the Act by initiating compensation payments without prejudice and without admitting liability by issuing a NTCP, as Employer did in this case. Section 406.1(d)(1) of the Act, 77 P.S. § 717.1(d)(1).

Although an employer may controvert the claim at any time after issuing the NTCP, the employee is entitled to a maximum of ninety days of temporary compensation at the rate fixed in the notice until such time as the employer issues timely notices stopping and denying compensation as set forth in section 406.1(d)(5) and (6) of the Act, 77 P.S. § 717.1(d)(5), (6). *Armstrong*. We have previously held that an employer may properly file an NCD when it disputes a claimant's disability, even though it does not dispute that a work-related injury has occurred. *Gereyes v. Workers' Compensation Appeal Board (New Knight, Inc.)*, 793 A.2d 1017 (Pa.Cmwlth.2002); *Darrall v. Workers' Compensation Appeal Board (H.J. Heinz Company)*, 792 A.2d 706 (Pa.Cmwlth. 2002). In fact, the NCD form provides an employer with the option of acknowledging the occurrence of a work-related injury but declining to pay compensation benefits on the basis that the claimant is not disabled as a result of the work injury. *Armstrong*.

In the present case, Employer issued an NTCP on February 10, 2005. On April 20, 2005, Employer issued Claimant a notice stopping temporary compensation as well as an NCD, well within the ninety-day period during which temporary compensa-

tion was payable. In the NCD, Employer acknowledged that, although Claimant sustained a work injury, Claimant was not disabled as a result of this injury. Employer also cited other good cause, including a lack of medical documentation establishing that Claimant remained disabled, Dr. Kahanovitz' release of Claimant to return to full duty work, and Claimant's refusal of a return to his pre-injury position. Thus, the evidence of record reveals that Employer complied with the provisions of the Act and did not engage in an illegal supersedeas.[5] The Board did not err in affirming this aspect of the WCJ's decision.

Accordingly, the order of the Board is affirmed in part and vacated and remanded in part.

### ORDER

AND NOW, this 20th day of May, 2011, the June 8, 2010, order of the Workers' Compensation Appeal Board (Board), to the extent that it affirmed the decision of the Workers' Compensation Judge (WCJ) concluding that the issuance of a notice of compensation denial by Kemcorp (Employer) did not constitute an illegal supersedeas, is affirmed. However, the order of the Board, to the extent that it affirmed the WCJ's decision concluding that Employer was entitled to a suspension of benefits as of April 14, 2005, is vacated. The matter is remanded to the Board, with specific instructions to remand to the WCJ, for

---

5. We note that any reliance by Claimant on our previous decision in *Jordan v. Workers' Compensation Appeal Board (Philadelphia Newspapers, Inc.)*, 921 A.2d 27 (Pa.Cmwlth. 2007), *appeal denied*, 596 Pa. 748, 946 A.2d 689 (2008), is misplaced. In *Jordan*, the employer issued an NTCP and later issued an NCD solely citing other good cause for the basis of its denial. The other good cause consisted of a statement that the claimant suffered no compensable lost time from May 22, 2003, to July 11, 2003. However, this Court concluded that the employer's stated good cause was disingenuous because the only reason that the claimant suffered no compensable lost time was the fact that the claimant received salary continuation benefits during this period. Unlike Employer in the present case, the employer in *Jordan* never acknowledged that the claimant sustained a work injury. Hence, *Jordan* is distinguishable and does not support Claimant's assertions.

further findings consistent with this opinion.

Jurisdiction relinquished.