## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

HealthSouth Rehabilitation Hospital   :
of Altoona, LLC,                        :
               Petitioner       :
                             :
           v.             :   No. 1690 C.D. 2015
                             :   Submitted:  April 15, 2016
Workers' Compensation Appeal   :
Board (Ross and Mount Nittany   :
Medical Center),                :
              Respondents   :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                       **FILED:  July 19, 2016**


HealthSouth Rehabilitation Hospital of Altoona, LLC (HealthSouth) petitions for review of the August 26, 2015 opinion and order (August 2015 Board Order) of the Workers' Compensation Appeal Board (Board).  The August 2015 Board Order was issued following a rehearing granted pursuant to a petition filed by Mount Nittany Medical Center (Mt. Nittany); the August 2015 Board Order vacated in part, modified in part, and reaffirmed in part the Board's previous opinion and order issued on May 12, 2015 (May 2015 Board Order).  The May 2015 Board Order was issued following an appeal by both HealthSouth and Mt. Nittany from a January 31, 2013 decision and order of a Workers' Compensation Judge (WCJ) granting a Claim Petition by Jessica Ross (Claimant), who was

employed part-time at HealthSouth, as a nurse's aide, from September 2008 until July 2009, and at Mt. Nittany full-time, as a registered nurse, for approximately three and one-half months in 2011. (WCJ Decision and Order, Reproduced Record (R.R.) at 290a-320a.)

In February 2009, Claimant sustained an injury to her right foot while employed at HealthSouth, when a patient in a wheelchair rolled over her right foot. HealthSouth issued a medical-only Notice of Compensation Payable, recognizing the injury as a "right foot contusion resolved." (Notice of Compensation Payable, R.R. at 17a.) Claimant treated with panel physicians for a period of ninety days following the injury, after which she sought treatment, on May 7, 2009, with Suzette Song, M.D., an orthopedic surgeon; throughout this period, Claimant was on sit-down duty, but she missed no time at work nor did she suffer any loss of wages. (November 8, 2011 Hearing Transcript (H.T.), R.R. at 43a-44a.) Claimant resigned from her position at HealthSouth at the end of July 2009 to attend nursing school, and following her graduation, in February 2011 she began working at Mt. Nittany. During her three and one-half months at Mt. Nittany, Claimant worked 12-hour shifts that required constant standing and walking; continued pain and swelling in her right foot caused her to again seek treatment from Dr. Song in May 2011, and in June 2011 she resigned from Mt. Nittany to prepare to undergo fusion surgery, performed by Dr. Song, to her right foot. (H.T., R.R. at 50a, 52a, 54a, 68a.)

Claimant's previous medical history is relevant in this case. In 2005, while playing collegiate softball, Claimant was injured when she twice fouled a pitch off of her right foot; she received medical treatment at that time from Dr. Song, who performed two surgical procedures for her right foot condition. (WCJ

Decision and Order, Testimony and Evidence, R.R. at 298a.) She returned to play collegiate softball in Spring 2006. (*Id*.)

Claimant filed a Claim Petition on June 17, 2011, alleging that she sustained an injury to her right foot while employed at HealthSouth, and sought payment of medical bills, attorneys' fees, and full disability benefits as of July 8, 2011, the date of her surgery, and ongoing; on August 8, 2011, Claimant filed a Joinder Petition, alleging that her work for Mt. Nittany may have been a substantial, contributing factor in aggravating her right foot condition. (Claim Petition, R.R. at 9a-10a; Joinder Petition, R.R. at 15a-16a.) In addition to granting both the Claim Petition and Joinder Petition, the WCJ denied a Petition to Terminate Compensation Benefits filed by HealthSouth, instead granting a suspension of benefits as of August 9, 2012, the date on which Claimant was released by Dr. Song to full-duty employment without restrictions. (WCJ Decision and Order, R.R. at 319a.) The WCJ directed both HealthSouth and Mt. Nittany to issue payment, in equal amounts, for temporary total and/or partial disability indemnity benefits and medical expenses beginning with the onset of disability subsequent to the February 2009 date of injury and concluding on August 9, 2012. (*Id*., R.R. at 317a, 319a-320a.) The WCJ concluded that the 2005 non-work related athletic injury was a substantial contributing factor in Claimant's condition, and that her work injury at HealthSouth and the increase in her symptoms in 2011 while employed at Mt. Nittany were both significant contributing factors in her condition. (*Id*., R.R. at 317a.)

Both Mt. Nittany and HealthSouth appealed the WCJ's decision, and in its May 2015 Board Order, the Board modified in part, reversed in part, and affirmed in part the WCJ Decision and Order, finding that: 1) the WCJ erred in

3

awarding Claimant benefits prior to June 7, 2011, as there was no evidence to support a finding of disability prior to that date; 2) the WCJ erred in apportioning the payment of disability payments between Mt. Nittany and HealthSouth; 3) Mt. Nittany was 100% liable for the payment of any and all disability benefits for the period of June 7, 2011 through August 9, 2012; and 4) HealthSouth remained liable for the payment of medical benefits prior to June 7, 2011.[1] (May 2015 Board Order, R.R. at 351a.) In its opinion, the Board characterized the symptomatic increase Claimant experienced at Mt. Nittany as a "second workplace injury" that aggravated the condition in which Claimant was left by the 2009 injury at HealthSouth, when a wheelchair ran over her foot, and determined that our precedent dictates that the courts must allocate responsibility for payment of benefits based upon the impact each injury has upon earning power, not upon the relative causal contribution of each to the ultimate physical disability. (*Id*., R.R. at 348a-349a.) Citing this Court's decision in *South Abington Township v. Workers' Compensation Appeal Board (Becker)*, 831 A.2d 175, 180-181, (Pa. Cmwlth. 2003), the Board concluded that the entire responsibility for Claimant's earnings loss must fall to Mt. Nittany for Claimant's disability beginning in 2011, as the record reflects that Claimant returned to work with HealthSouth after the 2009 injury with no loss of earning power. (*Id*., at 349a.)

In an order dated June 22, 2015, the Board granted Mt. Nittany's Petition for Rehearing; Mt. Nittany averred that in rendering its opinion in this matter, the Board failed to recognize that neither of the testifying medical experts

---

[1] Claimant testified that a large portion of her medical treatment has been paid through her mother's health insurance policy from Capital Blue Cross, and Claimant also has paid approximately $400 out-of-pocket for co-pays and deductibles. (H.T., R.R. at 54a-55a.)

provided unequivocal medical testimony to support a finding that Claimant's employment with Mt. Nittany was a significant contributing factor to her disability. (Petition of Mount Nittany Medical Center for Rehearing.) Upon further consideration, the Board agreed, and in its August 2015 Board Order, the Board vacated in part, modified in part, and reaffirmed in part its May 2015 Board Order, concluding that HealthSouth, and not Mt. Nittany, was the sole liable employer, and as such was responsible for the payment of 100% of Claimant's benefits. The Board therefore vacated its previous opinion and order to the extent it had determined that Mt. Nittany was liable for the payment of Claimant's benefits; modified its previous opinion and order to reflect its reversal of the WCJ's determination that Claimant's employment with Mt. Nittany substantially contributed to her injury; and reaffirmed the remaining portions of its previous opinion and order regarding the WCJ's determination that Claimant's injury with HealthSouth was a substantial contributing factor to her disability. (August 2015 Board Order, R.R. at 360a-362a.) This appeal followed.[2]

In a claim petition, the claimant bears the burden of establishing all the necessary elements to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Where an injury is caused by both work-related and non-work-related factors, the claimant must establish with unequivocal medical evidence that her work activities were a substantial, contributing factor in causing her disability. *Martin v. Workers'*

---

[2] Our review is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 706 n.3 (Pa. Cmwlth. 2011).

*Compensation Appeal Board (Martin)*, 783 A.2d 384, 389 (Pa. Cmwlth. 2001). Before this Court, HealthSouth asserts that the credited medical evidence in this case, including that of Claimant's treating physician, Dr. Song, as well as that of its expert, Dr. Horenstein, constitutes substantial competent evidence to support the WCJ's determination that Claimant's work activities at Mt. Nittany were a substantial contributing factor in her disability. Alternatively, HealthSouth argues that the Board erred in finding it 100% liable based upon the incompetent opinions of Claimant's expert, Dr. Song. We reject both arguments.

In the WCJ Decision and Order, the WCJ discussed the testimony provided by Claimant over the course of two hearings, as well as the deposition testimony of Drs. Song and Horenstein; the WCJ did not make specific findings of fact regarding this testimony but rather quoted extensively from the information provided in the proposed findings of fact prepared by the respective parties' counsel. The WCJ stated that as summarized by Claimant's counsel, Claimant testified that: (i) by Spring 2006, she had made a full recovery from her 2005 sports injury and experienced no additional symptoms for the ensuing three years, until she experienced her February 2009 work injury at HealthSouth;[3] (ii) even after Dr. Song discontinued her treatment of Claimant following the HealthSouth injury and released her for full-duty work in May 2009, and over the sixteen month period during which Claimant pursued her nursing degree, her right foot symptoms progressively worsened, especially after she was on her feet all day; and (iii) during the period of time Claimant worked post-graduation at Mt. Nittany, she continued to experience pain and swelling on a daily basis but nothing occurred

---

[3] Claimant testified that she returned to collegiate softball for both the 2006 and 2007 seasons at Penn State Altoona. (H.T., R.R. at 59a.)

6

during her employment to worsen her symptoms. (WCJ Decision and Order, R.R. at 297a-298a; Claimant's Proposed Findings of Fact, Discussion and Conclusions of Law.)

Conversely, the WCJ noted that: (i) although Claimant testified with certainty that she believed she had fully recovered from her 2005 sports injury as of March 2006, she failed to recall that on April 4, 2006 and again on August 28, 2006, she saw Dr. Song again, complaining of dorsal distal foot pain; (ii) although she testified that she continued to have symptoms while in nursing school, she did not seek any medical treatment during that period; and (iii) Claimant testified that she wanted to return to work at Mt. Nittany, and although she initially testified that her duties at Mt. Nittany were not contributing to her symptoms, when confronted with a note made by Dr. Song's assistant in May 2011 noting that Claimant had reported that her 12-hour shifts there really aggravated her symptoms, Claimant admitted that she had in fact made that statement.[4] (WCJ Decision and Order, R.R. at 299a-301a; HealthSouth's Proposed Findings of Fact and Conclusions of Law.) The WCJ set forth portions of Mt. Nittany's counsel's summary of Claimant's testimony, including her testimony that at the end of a 12-hour shift, Claimant experienced a temporary increase in foot symptoms, but that her symptoms quickly returned to baseline after her shift; Claimant testified that her work duties at Mt. Nittany did not materially worsen her foot condition. (WCJ Decision and Order, R.R. at 302a; Mt. Nittany's Proposed Findings of Fact and Conclusions of Law.)

---

[4] Claimant testified, "I said the back-to-back 12-hour shifts were aggravating; however, when I would go home and I would elevate my foot and ice it, I was back to my baseline, 3 to 4, pain." (H.T., R.R. at 66a-67a.)

7

Regarding the testimony of Dr. Song, the WCJ also cited portions of the proposed findings presented by each of the parties' counsel. He noted that Claimant's counsel described Dr. Song's surgery as removal of bony debris, repair to the Lisfranc ligament, stabilization of four bones and stabilization of the area where the Lisfranc ligament sits and across from the first metatarsal cuneiform joint. (WCJ Decision and Order, R.R. at 303a.) As described by Claimant's counsel, Dr. Song testified that when she asked Claimant in May 2009 how she had been doing prior to the HealthSouth injury, Claimant responded that she was doing very well and was not requiring any pain medicine or modifying her activities. (*Id*., R.R. at 303a.) At that time, Dr. Song discussed with Claimant the possibility that she may need to undergo fusion surgery in the future and advised modification of her activities in an effort to avoid the surgery as long as possible. (*Id*., R.R. at 304a.)

The WCJ noted portions of Claimant's counsel's proposed findings of fact in which counsel states that Dr. Song's expressed opinion, to a reasonable degree of medical certainty, was that: (i) Claimant's work injury at HealthSouth was a substantial contributing factor in her need to undergo a right foot fusion in 2011; (ii) the drastic change in symptomology in 2009 did not relent over the next two years and substantially worsened from that point forward until the point where the fusion surgery was required; and (iii) Claimant had made a normal and uneventful recovery from her 2005 sports injury surgeries, and Dr. Song did not expect to be performing a fusion surgery six years later. (*Id*., R.R. at 305a.) The WCJ further noted portions of the proposed findings of fact provided by Mt. Nittany's counsel, wherein counsel states that upon questioning from Claimant's counsel, Dr. Song was unable to unequivocally relate Claimant's work activities

8

during her brief period of employment at Mt. Nittany as a substantial contributing factor to the fusion surgery, and noted that although the 12-hour shifts could temporarily increase symptoms, she could not unequivocally state that it would increase foot problems or change the underlying pathology. (*Id.*, R.R. at 310a.)

Finally, the WCJ set forth portions of findings of fact provided by each of the parties' counsel regarding the testimony of Dr. Horenstein, the consulting orthopod for HealthSouth. HealthSouth's proposed findings indicated that Dr. Horenstein opined: (i) when the Lisfranc joint and ligament is injured, as was Claimant's joint and ligament in the 2005 sports injury, it is very common for patients to develop arthritic changes because cartilage is sheared and becomes nonviable over time; (ii) notwithstanding Claimant's testimony that she fully recovered, she continued to notice and report pain and soreness; (iii) her HealthSouth wheelchair injury was insignificant, as supported by her diagnostic studies and relative lack of treatment and played no causal factor in her need for fusion surgery and current disability; and (iv) Claimant was inevitably going to have a natural progression of arthritis from her 2005 injury, and became symptomatic over time, resulting in the need for a fusion. (*Id.*, R.R. at 313a-314a.) The WCJ noted that as set forth in HealthSouth's proposed findings of fact, Dr. Horenstein was unable to unequivocally opine that Claimant's foot surgery and corresponding disability were related to her term of employment at Mt. Nittany, and were due to the natural progression of her sports injury. (*Id.*, R.R. at 315a.)

Having set forth excerpts from proposed findings of fact prepared and offered by counsel of each of the parties, the WCJ made findings of fact and conclusions of law in which he dismissed as not credible any testimony of Claimant, as well as any other evidence to the contrary, that the 2005 sports injury

9

was not a significant contributing factor to her current clinical profile. (WCJ Decision and Order, Findings of Fact (F.F.) ¶1, R.R. at 317a.) The WCJ further determined that "[g]iven the complexity of the testimony and evidence of record, inclusive of the significant – if not radical, as reviewed above – inconsistencies and variances in this evidence, the determinations on the three petitions as reviewed above, and as follows, is arguably the most equitable resolution of the evidence, when considered in its entirety." (*Id.*) The WCJ found that the testimony and evidence supportive of the 2009 work incident at HealthSouth supports a determination that that injury has been a significant contributing factor to the medical and surgical treatment that followed. (*Id.*) With regard to Claimant's period of employment at Mt. Nittany, the WCJ found that despite Claimant's assertions otherwise, Dr. Song's medical records, inclusive of a note regarding Claimant's complaint to one of Dr. Song's assistants that her symptoms were really aggravated by her 12-hours shifts at Mt. Nittany, reflected otherwise. (*Id.*) Acknowledging that Claimant was employed at Mt. Nittany for only a very brief period, nevertheless the WCJ again noted as significant the fact that Claimant sought treatment from Dr. Song several months after having begun to work at Mt. Nittany, and that she reported that the 12-hour shifts were really aggravating her symptoms. (*Id.*, R.R. at 318a.) In his Conclusions of Law, the WCJ stated:

> Equitable considerations support the granting of suspension of benefits [at] this time, again, as reviewed above, when considering the totality of the evidence of record, as well as the multiple contributing factors to the claimant's current clinical profile. Any contention on her part that the athletic injuries which initiated the onset of developments which followed have played no role whatsoever in her current clinical profile, along with any contention of disability from employment, is simply not

10

credible. Conversely, the athletic injuries of 2005, and medical and surgical developments which followed, coupled with her injury by the wheelchair while employed with HealthSouth, along with her employment with the Mount Nittany Medical Center, have <u>all</u> contributed to her current clinical profile.

(WCJ Decision and Order, Conclusions of Law, R.R. at 319a.)

However, there was simply no unequivocal medical testimony presented to the WCJ from which he could determine that Claimant's brief employment at Mt. Nittany played a substantial contributing role in her need for fusion surgery in 2011 and her disability thereafter and indeed, the WCJ made no such finding. Dr. Horenstein opined repeatedly that Claimant developed arthritis as a result of her 2005 sports injury, and that this arthritis led inevitably to her need for fusion surgery in 2011. As stated by the Board in its August 2015 Board Order:

> Dr. Horenstein, HealthSouth's medical expert, opined that Claimant sustained a very significant injury when she injured her foot playing softball in 2005, and that she had arthritis even then. He opined that Claimant's arthritis progressed over time, resulting in her need to return to a doctor and ultimately have surgery. He indicated that Dr. Song's discussion of surgery with Claimant, which occurred in 2009, with the actual surgery being performed in 2011, was due to Claimant's arthritis, which developed as a result of her softball injury. When specifically questioned as to whether Claimant's work with Mount Nittany played a role in Claimant's need for surgery in 2011, Dr. Horenstein opined again that Claimant had a progression of arthritis over time, but "if you are on your foot and you have arthritis in your foot, you are going to be more symptomatic and be more likely to complain to a doctor than if you were doing an accounting-type job and just sitting all the time." [citation to deposition omitted.] We

11

believe that this statement is insufficient to support a finding that Claimant's employment with Mount Nittany substantially contributed to her disability.

(8/26/15 Board Order, R.R. at 359a.)  As well, the August 2015 Board Order found Dr. Song's testimony equivocal and insufficient to support a finding that Claimant's employment with Mt. Nittany substantially contributed to her injury and disability.  The Board stated:

> Dr. Song, Claimant's treating physician, indicated that she could not state with any certainty whether Claimant's work at Mt. Nittany contributed to her need for surgery, and her disability.  Rather, Dr. Song opined that Claimant's 2009 work injury with HealthSouth was a substantial, contributing factor in Claimant's need to undergo surgery, which resulted in her disability.  When asked about Claimant's employment at Mt. Nittany, Dr. Song opined that while working on her feet could have increased Claimant's symptoms, she was not sure if Claimant employment…contributed to her need for surgery and that such an increase in symptoms could either be related or unrelated to Claimant's employment at Mt. Nittany.

(*Id*., R.R. at 360a.)  Medical expert testimony that is less than positive or is based upon possibilities is equivocal and is not legally competent to establish a causal relationship.  *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 498 A.2d 800, 802 (Pa. 1985); *Potere v. Workers' Compensation Appeal Board (Kemcorp)*, 21 A.3d 684, 690-91 (Pa. Cmwlth. 2011); *Merchant v. Workers' Compensation Appeal Board (TSL, Ltd.)*, 758 A.2d 762, 770 (Pa. Cmwlth. 2000).  Whether a medical expert has unequivocally testified that the claimant's injury and disability were caused by the workplace incident must be determined from examination of the medical witness's entire testimony taken as a whole.  *Lewis*, 498 A.2d at 803; *Potere*, 21 A.3d at 690; *Merchant*, 758 A.2d at

12

770. Whether expert testimony is equivocal is an issue of competence, not credibility, and is a question of law subject to this Court's plenary, *de novo* review. *Lewis*, 498 A.2d at 803; *BJ's Wholesale Club v. Workers' Compensation Appeal Board (Pearson)*, 43 A.3d 559, 565 (Pa. Cmwlth. 2012); *Potere*, 21 A.3d at 690. During her deposition, Dr. Song was asked whether Claimant's months of work at Mt. Nittany played a substantial part in her need to have the fusion surgery and she replied, "I'm not sure. I think that set into motion the two years before that, in February of '09. How much [the work at Mt. Nittany] additionally contributed to it, I'm not sure." (December 20, 2011 Deposition of Dr. Song, R.R. at 147a.) The WCJ did not, and could not have cited any portion of Dr. Song's testimony wherein she opined unequivocally that Claimant's work at Mt. Nittany was a substantial contributing factor to her injury or disability. Accordingly, we find that the WCJ erred in his determination that medical testimony supported such a finding.

We also reject HealthSouth's argument that the Board relied upon incompetent testimony from Claimant's expert, Dr. Song. Dr. Song clearly had extensive personal knowledge of Claimant's physical condition, her medical records and treatment and her diagnostic test results, dating back to her treatment of Claimant's original sports injury in 2005. She testified extensively with regard to her initial diagnosis, after Claimant was referred to her in 2005, and the surgery she performed on Claimant's right foot in July of that year, as well as the postoperative care she provided to Claimant up until February 2006. (*Id.*, R.R. at 124a-132a.) Dr. Song saw Claimant again in August 2006, after she had released Claimant to resume her collegiate softball career, at which time she placed Claimant in an orthotic to help her finish her recovery. (*Id.*, R.R. at 133a.)

13

Following her February 2009 injury at HealthSouth, Claimant returned to Dr. Song's care, and Dr. Song testified as to her diagnosis at that time, her treatment recommendations, diagnostic test results, and her discussions with Claimant regarding possible future surgical options if her symptoms did not abate. (*Id.*, R.R. at 137a-138a.) Dr. Song testified that she discussed activity modifications Claimant might make in order to avoid surgery in the future; she stated that Claimant was quite frustrated by the effects of the HealthSouth injury, as she had been asymptomatic up until the incident there. (*Id.*, R.R. at 138a.) Dr. Song stated that Claimant returned to her in May 2011, because "she was at the point where this same pain that she had described after the wheelchair event had gotten to the point where she was ready to surgically address it." (*Id.*, R.R. at 139a.) Dr. Song provided the details of the fusion surgery she then performed on Claimant and described why she could opine that the HealthSouth injury was a substantial contributing factor in her need to undergo such surgery, stating "[Claimant] had a pretty drastic change in her symptomology at the time of that event and the type of change that did not relent. I mean her symptoms from that point on got substantially worse." (*Id.*, R.R. at 143a.) She opined within a reasonable degree of medical certainty that Claimant would be physically able to return to nursing work. (*Id.*, R.R. at 148a.) As noted by the Board, the WCJ accepted Dr. Song's testimony as credible, and the Board properly relied upon such testimony.

Accordingly, the August 2015 Board Order is affirmed.

_____
JAMES GARDNER COLINS, Senior Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

HealthSouth Rehabilitation Hospital   :
of Altoona, LLC,   :
               Petitioner   :
   :
           v.   :   No. 1690 C.D. 2015
   :
Workers' Compensation Appeal   :
Board (Ross and Mount Nittany   :
Medical Center),   :
            Respondents   :

# **O R D E R**

AND NOW, this 19th day of July, 2016, the order of the Workers' Compensation Appeal Board dated August 26, 2015 in the above matter is AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge