IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Don Gishbaugher,                                    :
                               Petitioner          :
                                                   :
             v.                                    :
                                                   :
Workers' Compensation Appeal                       :
Board (Dialysis Clinic, Inc.),                     :     No. 593 C.D. 2016
                               Respondent          :     Submitted: September 9, 2016


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY[1]                               FILED: February 22, 2018


          Don Gishbaugher (Claimant) petitions this Court for review of the
Workers' Compensation (WC) Appeal Board's (Board) March 15, 2016 order
affirming the Workers' Compensation Judge's (WCJ) decision granting Claimant's
Claim Petition (Petition) for a temporary period.  Claimant presents two issues for this
Court's review: (1) whether Dialysis Clinic, Inc.'s (Employer) medical expert's
testimony was equivocal and incompetent; and (2) whether Employer's contest was
reasonable.  Upon review, we affirm.

          Claimant began working with Employer as an acute dialysis registered
nurse in June 2013.  Claimant had worked with Employer for approximately six years
before that time.  Claimant has had lower back problems for the past ten years for which
he has received injections and pain medications from his family doctor Mohammad

---

[1] This case was reassigned to the authoring judge on January 3, 2018.

Malik, M.D. (Dr. Malik), and treatment from chiropractor James Spiegel (Dr. Spiegel). Claimant had also been receiving injections for his lower back from Derek J. Thomas, M.D. (Dr. Thomas).

On either September 9 or 11, 2013, Claimant was injured while working at the Dialysis Clinic in Chippewa when he was assisting two paramedics in lifting a paraplegic patient from a stretcher to a dialysis chair. At one point, Claimant rotated to his left and felt a lot of pain in his lower back. Claimant did not tell the paramedics or anyone from Employer about his injury that day. Thereafter, Claimant informed his supervisor Carrie Finch (Finch) that he was going to see the chiropractor because he injured his back lifting a patient at work. Claimant also told Finch that he would return to work on Friday, since his past chiropractic treatments normally alleviated his back pain. Claimant had his back adjusted by Dr. Spiegel on September 18, 2013.

Claimant worked from the date of the injury until September 18, 2013. Although his pain was in the same location as he had experienced over the past ten years, this pain was more severe, constant, and traveled down both of his legs. When Claimant told Finch that he could not work on September 18th, she did not ask him to complete an accident report, nor did she send him to any company doctors.

On September 21, 2013, Dr. Malik treated Claimant and wrote a note excusing Claimant from work for two weeks. Dr. Malik also gave Claimant injections and prescribed physical therapy. Claimant gave Dr. Malik's note to Employer's front desk receptionist. Claimant attended physical therapy at the Centers for Rehab Services five or six times over the course of the two-week prescription. These therapy sessions did very little to relieve the pain.

Claimant attended an appointment with Dr. Thomas which had been scheduled before Claimant's work injury. Dr. Thomas recommended back surgery. Claimant obtained a second opinion from James Kang, M.D. (Dr. Kang) and, ultimately, Dr. Kang performed a laminectomy on October 30, 2013. Despite that

2

Claimant's lower back pain as well as the nerve pain into his legs improved since his surgery, Dr. Kang has not released Claimant to return to work without limitations. On November 18, 2013, Claimant had a post-accident drug screen.[2] Claimant received unemployment compensation for 26 weeks.

On June 25, 2014, Claimant filed his Petition alleging a work-related aggravation of lumbar spinal stenosis from L3-L5, occurring on September 11, 2013. Therein, Claimant sought full disability from September 19, 2013 and ongoing, and claimed to have given Employer notice on September 21, 2013. Employer denied the material averments set forth in Claimant's Petition. On July 2, 2014, Employer issued a Notice of Workers' Compensation Denial (NCD) on the ground that Claimant did not suffer a work-related injury. WCJ hearings were held on July 24 and November 6, 2014, and February 5, March 25, and May 14, 2015. On July 17, 2015, the WCJ granted Claimant's Petition for a closed period, finding that Claimant sustained a temporary aggravation of pre-existing degenerative disease and spinal stenosis from which he had fully recovered as of August 20, 2014. The WCJ also found Employer's contest reasonable. Claimant appealed to the Board. On March 15, 2016, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[3]

Claimant first argues that Employer's medical expert Jack Smith, M.D.'s (Dr. Smith) testimony was incompetent because it was equivocal, contradictory, confusing and unsupported by substantial evidence. Specifically, Claimant contends that because Dr. Smith wrote in his independent medical examination (IME) report that the aggravation of Claimant's pre-existing injury was related to his need for surgery,

---

[2] Because there was no credible evidence as to the date Claimant notified Employer of the alleged injury, the WCJ used the drug screen date to conclude that Employer responded to Claimant's claim within the required 120 days.

[3] "On review[,] this Court must determine whether constitutional rights were violated, errors of law were committed, or necessary findings of fact were supported by substantial competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014).

3

but later testified that he was suspicious as to whether a work injury had occurred, Dr. Smith's testimony is equivocal. Claimant relies on *Potere v. Workers' Compensation Appeal Board (Kemcorp),* 21 A.3d 684 (Pa. Cmwlth. 2011), to support his position.

Initially,

> [t]he question of whether expert medical testimony is unequivocal, and, thus, competent evidence to support factual determinations is a question of law subject to our review. In such cases, we review the testimony as a whole and may not base our analysis on a few words taken out of context. 'Taking a medical expert's testimony as a whole, it will be found to be equivocal if it is based only upon possibilities, is vague, and leaves doubt.' *Kurtz v. Workers' Comp. Appeal Bd. (Waynesburg Coll*[.]*),* 794 A.2d 443, 449 (Pa. Cmwlth. 2002). '[M]edical testimony is unequivocal if a medical expert testifies, after providing foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists.' *O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.),* 29 A.3d 50, 58 (Pa. Cmwlth. 2011).

*Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods),* 37 A.3d 72, 80 (Pa. Cmwlth. 2012) (citations omitted). The *Potere* Court found Claimant's medical expert's opinion equivocal for the following reasons:

> [A] review of [Neil Kahanovitz, M.D.'s (]**Dr. Kahanovitz**)] **entire testimony** reveals that it **comprises contradictory opinions**. For example, Dr. Kahanovitz opined that, as of March 17, 2005, the date of the IME, [the c]laimant was 'able to work in a light to moderate setting' and 'that should be changed in approximately four weeks to a full-duty return to work without restrictions once he had undergone a physical therapy program. . . .' Additionally, on cross-examination, Dr. Kahanovitz acknowledged that he placed restrictions on [the c]laimant following the March 17, 2005[] IME[,] and that these restrictions were related to [the c]laimant's work injuries.
>
> However, Dr. Kahanovitz also opined that, 'in the absence of any objective abnormality on physical examination or

4

diagnostic studies that would indicate a permanent injury that [the claimant] would be able to and should be able to return to work as a tractor[-]trailer driver' as of March 17, 2005. Dr. Kahanovitz later explained that he originally released [the c]laimant to partial duty 'because of the excessive amount of vibration involved in driving a tractor trailer as well as the repetitive lifting and bending.' Further, Dr. Kahanovitz described the physical therapy he recommended for [the c]laimant as a 'prophylactic and preventative exercise program given [the claimant's] work' and his absence from such work for several months.

*Potere,* 21 A.3d at 691 (emphasis added; record citations omitted).

Here, unlike in *Potere,* Dr. Smith did not contradict himself, but rather based on facts that were not known to him at the time he issued his IME report testified he was suspicious as to whether the injury was work-related since Claimant did not tell his doctor until almost a month later what caused the injury. Specifically, Dr. Smith explained:

> Q.     Now, prior to today's deposition[,] did we go through some of the records that you had?
>
> A.     We did.
>
> Q.     And in particular did we go through Dr. Kang's report of January 15th, 2014?
>
> A.     We did.
>
> Q.     And in particular, on that report, did we look at page 2, paragraph 1?
>
> A.     We did.
>
> Q.     In that report **does [Claimant] tell Dr. Kang that he never told his boss about the work injury and never really filed any workers' compensation claim**?
>
> A.     **He did**.

Q.     Now, when you went through the medical records, **did [Claimant] ever tell Dr. Thomas that he had sustained a work injury**?

A.     **No**.

Q.     And when we went through Dr. Kang's records, **was it almost a month later when [Claimant] first told Dr. Kang he might have a work injury in September of 2013**?

A.     **It was**.

Q.     Dr. Smith, **is that unusual, for a patient to go see somebody for a back injury and not tell the doctor what happened to cause that injury**?

A.     **Highly**.

Q.     And now we've gone through that, **does that alter your opinion in any way from your report of August of 2014 regarding [Claimant's] work injury**?

A.     **I have to say I'm highly suspicious that there was a work injury with all this information.  I have to say I did not see the statement from Dr. Kang in review of the notes that he never reported it**.

I was surprised not to see a work injury report, but **he had never told me that he never reported it.  I, obviously, made the incorrect assumption that a report, an injury was reported and it was documented, so with all of this I would say I'm suspicious that an injury occurred, that there was an injury, so I would have to say I'm not a hundred percent sure**.

Reproduced Record (R.R.) at 62 (emphasis added).  Dr. Smith re-evaluated his original opinion to incorporate the additional information available at the time of his deposition. "[T]he law does not require every utterance which escapes the lips of a medical witness on a medical subject to be certain, positive, and without reservation or exception." *Bemis v. Workers' Comp. Appeal Bd. (Perkiomen Grille Corp.),* 35 A.3d 69, 72 (Pa. Cmwlth. 2011).  The above testimony clearly evidences the basis for Dr. Smith's testimony.

6

Further, "the medical witness must testify not that the injury or condition might have or possibly came from the assigned cause but that, in his professional opinion, the result in question did come from the assigned cause." *Id.* Here, Dr. Smith clearly opined that Claimant's surgery was related to his degenerative disease, not a traumatic event, and Claimant's spinal stenosis was degenerative in nature, not traumatic. Dr. Smith expressly testified:

> Q. And Dr. Smith, did we also review a little bit of Dr. Kang's deposition summary?
>
> A. We did.
>
> Q. And on page 15 I had asked Dr. Kang that even without knowing that some incident at work had occurred and just based on the condition of his back when he saw him, would he have recommended surgery, and Dr. Kang said yes.
>
> Would you agree with Dr. Kang's recommendation for surgery?
>
> A. I would.
>
> Q. In your opinion, **the surgery that [Claimant] underwent, was that related primarily because of that traumatic event, or related to degenerative events**?
>
> A. **I would say related to a degenerative event** which he had been dealing with for 20 years.
>
> Q. I also asked Dr. Kang when a patient has a specific incident, this is on page 16, that causes them to come and see you it's unusual for them to forget to mention that incident to you, and Dr. Kang said most people will tell me (indicating).
>
> Would you agree with that in your experience in treating patients?
>
> A. Yes.
>
> Q. Dr. Smith, on page 18 of Dr. Kang's deposition he mentioned – I asked him whether he had an opinion as to whether the spinal stenosis that [Claimant] had was traumatic

7

or degenerative in nature, and **Dr. Kang said it was degenerative in nature**.

**Would you agree with that statement**?

A.   **Yes**.

Q.   On page 19 of Dr. Kang's deposition I asked him if [C]laimant had reached the same level today, meaning the date of that deposition, that he was before September 2013, and Dr. Kang stated, and I'm going to quote, 'I believe that he's, hopefully, better than he was before his injury.'

Would you agree with that opinion, as well?

A.   I definitely agree with that.

Q.   And on page 21 of Dr. Kang's deposition testimony I asked him whether or not he was going to go ahead with the surgery whether or not [Claimant] had a back injury – let me strike that whole question and start over again. I asked Dr. Kang whether he would have gone ahead with the surgery whether or not [Claimant] had a back injury, and Dr. Kang said he would have gone ahead with the surgery.

Would you agree with that statement, as well?

A.   I would.

R.R. at 62-63 (emphasis added). Based upon this Court's review of Dr. Smith's testimony as a whole, we must conclude that the WCJ and the Board properly concluded that Dr. Smith's testimony was unequivocal and, thus, competent.

Notwithstanding that Dr. Smith questioned whether Claimant suffered a work injury, he nevertheless testified that, after surgery "[Claimant was] back to at least his pre-September 11th, 2013 condition from a medical perspective as it pertains to his back[.]" R.R. at 65. Said testimony, coupled with Dr. Smith's original opinion that Claimant had recovered from any work injuries, *see* IME Report; Physician's Affidavit of Recovery, is sufficient to prove that Claimant had recovered from any alleged work injury. *See Jackson v. Workers' Comp. Appeal Bd. (Res. for Human Dev.),* 877 A.2d

498 (Pa. Cmwlth. 2005) (testimony of the employer's medical expert was sufficient to support a termination of benefits, notwithstanding the doctor's expressed belief that the claimant never sustained the injury acknowledged in the parties' stipulation, because he testified that had the claimant suffered the work injury, it resolved); *To v. Workers' Comp. Appeal Bd. (Insaco, Inc.),* 819 A.2d 1222 (Pa. Cmwlth. 2003) (testimony of the employer's medical expert was sufficient to support a termination of benefits, notwithstanding the doctor's expressed belief that the claimant never sustained the injury acknowledged in the Notice of Compensation Payable, because he testified claimant had made a full and complete recovery from **any** injury he may have sustained in the course of his employment).

Next, Claimant asserts Dr. Smith's testimony was also equivocal because Dr. Smith's Affidavit of Recovery included restrictions. However, the Affidavit of Recovery stated in no uncertain terms:

> **This is to certify that the aforementioned employee** [**Claimant**] **has fully recovered from the following work injury**: Aggravation underlying degenerative disc disease and spinal stenosis which occurred on the date above [September 11, 2013], and **is able to resume without limitation**, his/her previous occupation of nurse on [August 20, 2014]. This affidavit is based on an examination of aforementioned employee [Claimant] performed by the undersigned physician [Dr. Smith] . . . .

Affidavit of Recovery at 1 (emphasis added). With respect to the restrictions listed on the back of the form, Dr. Smith explained in his IME report: "Due to the fact that [Claimant] has had [a] multilevel laminectomy performed, I feel he should have some restrictions at work." IME Report at 4.

Dr. Smith again expounded during his deposition:

> Q. And on [the Affidavit of Recovery] did you write any limitations or restrictions for [Claimant] regarding his return to work?

A.    I wrote a – I did fill out an estimated physical capacities form, and the restrictions I placed on him was a medium duty.

**Now, to clarify that, that restriction is related to what I feel after someone has a laminectomy, and, more importantly, when someone has degenerative dis**[c] **disease**, that if they entertain or start performing heavy duty labor, they're going to really put themselves at risk for developing further problems, so there's why I put him as a medium duty as a recommendation I give to people who have degenerative dis[c] disease.

Q.    So to be clear, the restrictions that are on the estimated physical capacities, is that related to any trauma he might have sustained in September of 2013, or related to his degenerative underlying condition?

A.    **It's related to the underlying degenerative condition**, and that's why I think it's somewhat confusing with the affidavit of recovery and affidavit of restriction; the restrictions are related to the degenerative dis[c] disease he has.    **He recovered from that work injury and he's resolved from that and there's no restrictions.**

R.R. at 61 (emphasis added).  Based on the above, this Court concludes that the WCJ and the Board properly concluded that Dr. Smith's testimony was unequivocal and competent.

Claimant next argues that Employer's contest was unreasonable because Employer issued a NCD before having any medical evidence to deny the claim.  We disagree.  This Court has held:

> Reasonableness of an employer's contest depends on whether the contest was prompted to resolve a genuinely[-]disputed issue or merely to harass the claimant.  '**An issue of credibility is a legitimate and reasonable subject of inquiry and challenge**,' and where the evidence lends itself to contrary inferences, an employer's contest may be adjudged reasonable.

*Thissen v. Workmen's Comp. Appeal Bd. (Hall's Motor Transit),* 585 A.2d 612, 615 (Pa. Cmwlth. 1991) (emphasis added) (quoting *Cleaver v. Workmen's Comp. Appeal Bd. (Robert E. Wiley/Cont'l Food Serv.),* 456 A.2d 1162, 1164 (Pa. Cmwlth. 1983)).

Here, Claimant filed his Petition on June 25, 2014, alleging that a work-related injury occurred on September 11, 2013. Because Claimant did not report the alleged injury at the time of its occurrence, it was reasonable for Employer to believe the alleged injury was not work-related. Whether or not a work injury occurred is a matter of credibility. Thus, Employer did not need a medical expert's opinion to counter Claimant's Petition. Further, the fact that Employer's NCD acknowledges notice in mid-November 2013 for an injury occurring in early September 2013, "would tend to dispel a suggestion that [C]laimant's disability as the result of that [injury] was within the obvious knowledge of [E]mployer." *Cleaver,* 456 A.2d at 1164. This statement is especially true here, where the WCJ did not believe that Claimant reported his injury on September 18, 2013. *See* WCJ Dec. at 9. Accordingly, the WCJ and the Board properly determined that Employer's contest was reasonable.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Don Gishbaugher,                              :
                       Petitioner       :
                                 :
          v.                            :
                                 :
Workers' Compensation Appeal        :
Board (Dialysis Clinic, Inc.),              :    No. 593 C.D. 2016
                    Respondent      :

## O R D E R

AND NOW, this 22nd day of February, 2018, the Workers' Compensation Appeal Board's March 15, 2016 order is affirmed.

_____
ANNE E. COVEY, Judge